(February 28, 1890.)

## BURKE ET AL. v. McDONALD ET AL.

[33 Pac. 49.]

MINING CLAIM—ADVERSE CLAIM.—It is not required in locating a mining claim that well-defined walls shall be developed or paying ore found within them, but something must be found in place, as rock, clay or earth so colored, stained, changed or decomposed by the mineral elements as to mark and distinguish it from the inclosing country, and experienced miners easily recognize it. Where the boundary of a claim is made excessive in size, with fraudulent intent, it is void, or if so large as to preclude innocent error, fraud will be presumed; if the markings are so indistinct that they cannot be easily traced, it will be good ground for filing an adverse claim.

PRACTICE—CITIZENSHIP.—It is a necessary allegation in a complaint of adverse claim to allege such claim has been filed in the land office, but it does not necessarily follow that it must be proven if not denied, but citizenship must be alleged, proven and found even if it is not denied.

SUBMISSION OF SPECIAL ISSUES TO JURY.—Section 4397 of the Revised Statutes leaves it optional with the jury in certain designated cases to find a general or special verdict. Where the issues are numerous, and their nature such as likely to confuse a jury, the court should insist on a special verdict, and should formulate issues into separate, distinct propositions, in logical, concise questions, and if it is not done the appellate court is warranted in holding it cause for reversal.

APPEAL from District Court, Shoshone County.

William H. Clagett, F. Ganahl and Albert Hagan, for Appellants.

In law the center line is assumed to be the line of the lode, and the discovery lode is the controlling fact in the making of a valid location. This center line cannot be afterward changed so as to affect rights subsequently acquired. (Idaho Rev. Stats., sec. 3100; *Patterson v. Hitchcock,* 3 Colo. 533; *Wolfley v. Labanon Co.,* 4 Colo. 116; *Eureka etc. Min. Co. v. Richmond Min. Co.,* 4 Saw. 323-324, Fed. Cas. No. 4548.) It is for the sole purpose of protecting subsequent locators that the legal claim of not to exceed fifteen hundred by six hundred feet is re-

quired to be so marked upon the ground that its boundaries can be readily traced. (*White v. Lee,* 78 Cal. 596, 12 Am. St. Rep. 115, 21 Pac. 363.) It is only valuable mineral deposits that are declared to be "open to exploration and purchase, and the lands in which they are found to occupation purchase." Where the contention is over a lode claim, the discovery of a vein or lode must be clearly shown to support a valid location. (U. S. Rev. Stats., sec. 2320; *Terrible Min. Co. v. Argentine Min. Co.,* 5 McCrary, 639, 89 Fed. 583; *Belk v. Meagher,* 104 U. S. 279; *Hauswirth v. Butcher,* 4 Mont. 299, 1 Pac. 714; *Gleeson v. Martin White Co.,* 13 Nev. 457; *Johnson v. Lowsly,* 13 Wall. 90; *Lansdale v. Daniels,* 100 U. S. 115, 116, 117.) A vein or lode is a continuous bed of mineralized rock within any other well-defined boundaries on the earth's surface and under it, and clearly separating it from the neighboring rock. (*Eureka Min. Co. v. Richmond Min. Co.,* 4 Saw. 308-313, Fed. Cas. No. 4548.) And this bed of mineralized rock must be within defined boundaries within the general mass of the mountain. (*Stevens v. Williams,* 1 McCrary, 487, Fed. Cas. No. 13,413, et·seq.; *Iron Silver Min. Co. v. Cheeseman,* 2 McCrary, 194, 8 Fed. 297.) The right to locate and the right to purchase a mining claim is an entirety, and cannot be divided, and if the plaintiffs have not shown the discovery of a vein beyond a dispute, they have neither a valid location nor right to purchase the area in conflict of the United States. (*Tibbits v. Ah Tong,* 4 Mont. 537 et seq., 2 Pac. 759; *Noyes v. Black,* 4 Mont. 534, 2 Pac. 769.) The court erred in refusing to submit special issues to the jury and refusing to allow them to find a special verdict thereon. The court seemed to treat this proceeding as an action of ejectment solely, and assigned as his reasons for refusing the issues requested to be specially found, that it would tend to confuse the jury and that a general verdict would be sufficient. (*Thomas v. Chisholm,* 13 Colo. 105, 21 Pac. 1019; *McGinnis v. Egbert,* 8 Colo. 41, 5 Pac. 652; *Becker v. Pugh,* 9 Colo. 589, 13 Pac. 906; *Manning v. Strehlow,* 11 Colo. 451, 18 Pac. 625; *Rosenthal v. Ives,* ante, p. 265, 12 Pac. 904.) Location notice under law of 1872 and law of Idaho territory. (*Drummond v. Long,* 9 Colo. 538, 13 Pac. 543; *Quimby v. Boyd,* 8 Colo. 206, 6 Pac. 462; *Gilpin Min. Co.*

*v. Drake,* 8 Colo. 590, 9 Pac. 787; *North Noonday v. Orient,* 1 Fed. 522; *Jupiter Min. Co. v. Bodie Min. Co.,* 11 Fed. 610-666.)

Woods & Heyburn, for Respondents.

Where controverted questions of facts are submitted to a jury, an appellate court will not attempt to set aside the conclusion arrived at by the jury in the absence of fraud or corrupt practices. (*McKeever v. Market St. R. R. Co.,* 59 Cal. 300; *Wilson v. S. P. R. R. Co.,* 8 Pac. C. L. J. 936; *Graves v. Moore,* 58 Cal. 435; *Bensley v. Whipple,* 57 Cal. 268; *School District v. Heath,* 56 Cal. 478; *Glenn v. Arnold,* 56 Cal. 632; *Myers v. Spooner,* 55 Cal. 257; *Nathan v. Doane,* 55 Cal. 349; *Fitz v. Bynum,* 55 Cal. 461, 462; and about a hundred cases cited under section 288 of Hayne on New Trial and Appeal, p. 857.)   What constitutes permanent monuments or natural objects is one purely for the jury. (*O'Donnell v. Glenn,* 8 Mont. 248, 19 Pac. 302; *Russell v. Chumasero,* 4 Mont. 317, 1 Pac. 713; *Flavin v. Mattingly,* 8 Mont. 242, 19 Pac. 385; *Gamer v. Glenn,* 8 Mont. 371, 20 Pac. 654; *North Noonday Co. v. The Orient,* 9 Morr. Min. Rep. 541; *Upton v. Larkin,* 7 Mont. 449, 17 Pac. 728.)

BEATTY, C. J.—The appellants, as claimants of the Lackawanna lode mining claim, situated in Yreka mining district, Shoshone county, Idaho, filed in the local land office their application for patent therefor, to which the respondents, as claimants of the Mammoth claim, within the times required by law, filed in said land office their adverse claims, and commenced this action in the district court, in said county. Upon the trial of the cause before a jury, a general verdict was found in respondents' favor, upon which a judgment being rendered, the appellants moved for a new trial, and, from the order of the court overruling such motion, they have appealed to this court. Whatever the value of the property in controversy may be, the cause, having been so ably and fully presented by eminent counsel, merits careful consideration. This has been given it, so far as the brief time between its submission and the necessarily early adjournment of the court permits. Our attention has been directed to numerous propositions involving ques-

tions of both law and fact, of not all of which will we attempt a consideration. Appellants earnestly urge that no vein was discovered in the Mammoth prior to its location or that of the Lackawanna. The difficulty is not so much ignorance of the law's demand, or of what constitutes a vein under it, as its willful. violation. The practice of posting notices upon any ground within which the existence of a ledge may be imagined has become so common that the emphatic requirement of the law, that a ledge discovery must initiate the location of a claim, is nearly forgotten. The courts will insist upon and enforce this most important provision of the law wherever opportunity offers. It must be remembered that every seam or crevice in the rock, even though filled with clay, earth or rock, does not constitute a vein, nor every ridge of stained rocks, its cropping. Nor, on the contrary, is it required that well-defined walls shall be developed, or paying ore found within them. But something must be found in place, as rock, clay or earth, so colored, stained, changed and decomposed by the mineral elements as to mark and distinguish it from the inclosing country. While the contents of ore-bearing veins widely differ, there is that indescribable peculiarity in the "ledge matter," the matrix of all ledges, by which the experienced miner easily recognizes his ledge when discovered. The evidence in this case does not clearly show such discovery of a vein in the Mammoth as the law requires.

It is also claimed by appellants that if the locators of the Mammoth did post their notice on September 17, 1885, as claimed, they, before marking its boundaries, left it, to prospect for and locate other claims, and before their return, the Lackawanna was located on the following day, and, as an evidence of the irregularity of their locations, I refer to the fact that in four days, commencing on September 16th, Smith, Catline and Flaherty located fifteen claims. The law does, in its liberality, allow the prospector, after the discovery of his vein, a reasonable time in which to develop its course, and then mark accordingly the boundaries of his claim; but it does not permit him, after having posted his notice, to leave his claim incomplete, and, going in quest of other claims, post his notice here and there over the country, to the exclusion of other prospectors, and at his

leisure prospect and mark out his claims. While no hardships or unusual exertion is required of him, good faith and reasonable diligence are. So long as he exercises the latter, the courts will shield him, but not in the commission of any fraud upon the law. If in this case the evidence clearly showed as true what appellants claim, this court would place its seal of condemnation upon the Mammoth location. But these questions above referred to, with that concerning the performance of the annual assessment work on said claim, were submitted, under the instructions of the court, to a jury, composed in part, at least, of miners, and, in view of the conflicting testimony on these questions this court would not be justified in disturbing their conclusion.

Were the boundaries of the Mammoth so large as to render the location void? Easterly of the discovery point it was marked about one hundred and fifty feet longer than the calls of the notice, and was considerably wider than allowed by law, while the westerly one thousand feet was marked substantially correct in size. Strict accuracy in the marking of claims cannot be expected or required. The character of the ground over which the locator must make his measurements must be considered; if even, with unobstructed view, greater accuracy would be required than when the surface is broken, and covered with timber. If a claim is made excessive in size with fraudulent intent, it is void. If made so large that it cannot be deemed the result of innocent error, fraud will be presumed, or if from any cause it be made so large and with such indistinct markings that its boundaries cannot be readily traced, and subsequent locators, after reasonable diligence, cannot find the same, it would be void, as against another location made in good faith. Just what excess will be tolerated, or what will vitiate, cannot be defined, but must depend somewhat upon the circumstances of each case. In Montana, it has been held a claim located one thousand seven hundred and sixty-three feet long is void, and the tendency there is toward strict accuracy of boundary; while in other courts it has been held that in the absence of fraud the claim will be held void only as to the excess. (*Stemwinder Case*, ante, p. 456, 21 Pac. 1040; *Mining Co. v. Rose*, 114 U. S. 579, 5 Sup. Ct. Rep. 1055; *Jupiter Min. Co. v. Bodie Consolidated Min. Co.*, 11

Fed. 675.) In this case it appears the ground is such that accuracy in measurement could not be expected; also that the Lackawanna was discovered and located mostly on the westerly end of the Mammoth, where the latter was correctly marked. It cannot be presumed, from all the circumstances of the case, the Lackawanna locators were misled by these markings, and the conclusion of the trial court is sustained.

The respondents having alleged in their complaint the filing by them in the land office of their adverse claim, appellants insist such filing must be proven, though not denied by them, and rely upon *Rosenthal v. Ives,* ante, p. 265, 12 Pac. 904, decided in this court, and *Mattingly v. Lewisohn,* 8 Mont. 259, 19 Pac. 310. The latter holds it a necessary allegation, but does not say it must be proven when not denied. In the former, this court held citizenship must be alleged, proven, and found, even though not denied. But why did it so hold? The reason is evident. Citizenship is an absolute qualification to the holding of mineral land. The government grants its lands only to its citizens. Before it will issue its patent to anyone, it must know positively that he is a citizen; hence the necessity of showing by the judgment of the court the citizenship of the applicant. Whether the plaintiff files or proves the filing of his adverse claim in the land office is a matter of no interest or consequence to the government. That is simply a question of practice which it provides for the protection of the interests of the adverse parties and which they may waive, if they desire. The appellants, not denying the allegation, waived their right of its proof by respondents, and the latter are clearly justified by section 4217 of our statute in not tendering testimony thereon.

We will consider together the alleged error of the court in not submitting special issues to the jury, and the informality of their verdict, which is as follows: "We, the jury in above-entitled cause, find the title to the right of possession of the area in conflict described in the complaint to be in favor of the plaintiffs"; upon which a judgment was rendered to the effect that plaintiffs were entitled to the possession of the ground in controversy as against the defendants. It must be observed this verdict simply finds the plaintiffs are entitled to the right of possession; it does not show they have such right by reason of a com-

pliance with the absolute requirements of the law, or that they have it as against the government, or any but the defendants. It amounts to a declaration that, as between the parties to the action, the plaintiff showed the better right, and should prevail, which in *Golden Fleece etc. Min. Co. v. Cable Con. etc. Min. Co.,* 12 Nev. 320, was held the rule; but whether or not such was the law then, it has not been since the congressional act of March 3, 1881, providing that, if "title to the ground in controversy shall not be established by either party, the jury shall so find." Since this act it has become necessary that the decision, whether by court or jury, must show, not only that the successful party is entitled to the possession as against his opponent, but also as against all others, including the government, and by a compliance with all the laws applicable. The government is interested in knowing, before issuing its patent to a party, that he is a citizen; that he has discovered a vein; that he has performed the $500 development work; that he has complied with the law. It is provided that upon the judgment in these adverse claim cases being certified to the general land office, together with the proper certificates of such claim, a patent shall issue to the successful party. If, therefore, a judgment is sufficient which shows only, as in this case, the title to be in the successful party as against his opponent, it might frequently happen that a patent would issue to a party who was an alien, or who had never discovered a vein, or in other particulars had failed to comply with the law of Congress. In the following cases judgments were reversed because of the insufficiency of the verdicts, some of which were more specific than the one under consideration: *McGinnis v. Egbert,* 8 Colo. 41, 5 Pac. 660; *Manning v. Strehlow,* 11 Colo. 451, 18 Pac. 625; *Thomas v. Chisholm,* 13 Colo. 105, 21 Pac. 1020. And *Rosenthal v. Ives,* ante, p. 265, 12 Pac. 904, was reversed because the judge who tried the cause failed to find the successful party was a citizen. This was not because that was a material issue under our practice, but that it was necessary to show his compliance with the laws. All these authorities are sustained by *Gwillim v. Donnellan,* 115 U. S. 50, 5 Sup. Ct. Rep. 1110, and we must hold the verdict in this case informal and cause for reversal. Our statute, by section 4397, after designating the class of cases in which it is optional with the

jury to find a general or special verdict, further provides that "the court may direct the jury to find a special verdict in writing, upon all or any of the issues." In cases where the number and nature of the issues are such as likely to confuse the jury, the court can greatly aid it by formulating such issues into separate, distinct propositions, and thus have them submitted in logical, concise questions, instead of in one confused mass. Through a general verdict, a jury is more likely to jump to a conclusion or yield to its impulse or sympathy, than when special issues are submitted, to which the facts can be directly applied. Certainly the court must submit only those material, and only in such number and form as will aid, and not bewilder, the jury. Is this a matter left entirely to the discretion of the court? It might be so held if the statute were designed alone for the convenience of the court, but it is not. On the contrary, its object is to aid the jury to the proper conclusions, and to promote justice in the administration of the law. It is a discretion that must be soundly exercised by the court, and subject to review as any other discretionary power when not properly exercised. The complicated nature of the issues in this case is such as to render it one in which special issues should be submitted, if ever necessary in any case, and the court's error in refusing the request of appellants in this matter is also cause for reversal. The appellants also asked the court to have the jury view the premises, as permitted by our statute. There are many features of this case which mark it as one in which this request should have been granted, but whether the action of the court is cause for reversal, it is unnecessary to determine. It follows from the foregoing that the judgment and order appealed from must be reversed, and the cause remanded for a new trial; and it is so ordered.