(November 26, 1898.)

## GIFFEN v. CITY OF LEWISTON.

### [55 Pac. 545.]

DAMAGES—DEFECTIVE SIDEWALK—SIDEWALK INCLUDED IN STREETS AND PUBLIC GROUNDS.—A sidewalk is included within the term "streets and public grounds" as used in a city charter which makes the city "liable to anyone for damages sustained by accident or casualty . . . . on account of the condition of any street or public ground" within the city.

CITY CHARTER—CONTRIBUTORY NEGLIGENCE.—The provision in a city charter that such city "shall be liable to anyone for any loss or injury to person or property growing out of any casualty or accident happening to any such person or property on account of the condition of any street or public ground therein," does not deprive the city of the ordinary defense of contributory negligence to an action brought against it for damages brought under such charter provision.

Points decided.

SAME—ACCOUNTS—DOES NOT APPLY TO TORTS.—A provision in a city charter that "all demands and accounts against the city must be presented to the clerk with the necessary evidence in support thereof, and he must submit the same to the council, who shall by a vote direct whether the same shall be paid or any part thereof, as they may deem it just and legal," does not apply to torts, but to those demands upon which actions *ex contractu* may be brought.

INSTRUCTIONS.—Contradictory instructions upon a material issue held to be ground for reversal.

INSTRUCTIONS AS TO NEGLIGENCE.—In a suit against a city to recover for personal injury growing out of a defective sidewalk, the court instructed the jury that "negligence on the part of the plaintiff resulting in the injury and without which the injury would not have occurred, would not excuse the city from liability when the city officials had notice of such defect, or could have known of it by the use of reasonable diligence, in time to have prevented it"; *held*, reversible error, as such instruction took from the jury the defense of contributory negligence under the facts of the case at bar.

PERSON INJURED KNOWING DANGEROUS CONDITION OF STREET.— Where a person knew prior to an injury received of a dangerous condition in a street, such knowledge would not preclude him from a recovery for an injury received by accident caused by such dangerous condition, provided he used reasonable diligence to avoid injury; but should injury result from his carelessness, he should not recover for such injury.

PRACTICE.—In making an opening statement to the jury counsel has no right to state his views of the law of the case. Such opening statement should be confined to pointing out the issues made by the pleadings, and stating the facts which the party expects to prove.

MEASURE OF DAMAGES—COMMUNITY PROPERTY.—Loss of ability to labor is an element of general damage to be considered by the jury in an action brought by husband and wife to recover for a tortious injury to the wife, the amount so recovered being, under the laws of Idaho, community property of both husband and wife.

INTERROGATORIES TO JURY — SPECIAL VERDICT.— The submission of interrogatories to the jury for the purpose of obtaining a special verdict is largely a matter of discretion, and it is not an abuse of such discretion to refuse to submit such interrogatories in a cause when the issues are not complicated.

PRACTICE—PREJUDICIAL ERROR.—In an action against a city to recover for an injury received by reason of the dangerous condition of a street, it is prejudicial error to permit the plaintiff to show that after the accident the defendant promptly remedied the defect which caused the accident.

BEHAVIOR OF COUNSEL ON THE TRIAL.—It is not proper for counsel, while arguing a cause to the jury, to question the motives of opposing counsel in objecting to the introduction of evidence on the ground that it is immaterial, incompetent or irrelevant.

PRACTICE—INTRODUCTION OF EVIDENCE.—The practice of opening a case to permit a party to introduce evidence in chief, after he has closed his case, while a matter of discretion in the trial court, should be discouraged to the extent of requiring the moving party to show good excuse, such as inability to produce before closing that the evidence was discovered afterward or other good reason.

DAMAGES—DISFIGUREMENT AN ELEMENT OF.—Disfigurement caused by a tortious injury is an element of general damage, but annoyance caused by contemplation of such disfigurement is too remote to be considered as an element of damage.

EVIDENCE—PRECAUTION—ACCIDENT.—The presence of a light at the place of accident does not excuse a city, which is required to keep its streets in safe condition, from liability for an accident caused by one of its streets being in a dangerous condition, but the presence or absence of such light is a circumstance to be considered by the jury in determining whether the plaintiff was, or was not, guilty of contributory negligence.

VERDICT—RESORT TO CHANCE.—A verdict which is reached as the result of resort to chance should be set aside, and the affidavit of a juror is competent under the provisions of section 4439, Revised Statutes of Idaho, to show that the verdict was reached by resorting to chance.

EVIDENCE—WITNESS ALLOWED TO EXPLAIN HIS TESTIMONY.—It is not error to permit a witness to make an explanation of statements made by him on the witness-stand or to permit him to correct any mistake he may have made in giving his evidence, care being exercised to prevent such witness straying away from the issues, or making improper statements.

VERDICT—TO WHOM TO RUN.—In an action by husband and wife to recover damages for injuries received by the wife, the verdict and judgment should run to both husband and wife.

(Syllabus by the court.)

APPEAL from District Court, Nez Perces County.

James W. Poe and James E. Babb, for Appellant.

At common law a city was not liable for personal injuries resulting from the condition of a street or sidewalk. Section 93 of the charter of defendant city recognized the common law, and particularly repealed it—i. e., repealed it by establishing liability to anyone for any injury happening on account of the

condition "of any street or public ground therein," leaving the common-law exemption from liability on account of the condition of "sidewalks" unimpaired. Hence, defendant was not liable for the injury complained of which resulted on account of the condition of a sidewalk. (See 24 Am. & Eng. Ency. of Law, 88, where many authorities are cited in note 1; *Winbiglier v. Los Angeles,* 45 Cal. 36; *Tranter v. Sacramento,* 61 Cal. 271; *Chope v. Eureka,* 78 Cal. 588, 12 Am. St. Rep. 113, 21 Pac. 364; *Arnold v. San Jose,* 81 Cal. 618, 22 Pac. 877.) Section 7, page 148, of the Special and Local Laws of Idaho, where the expression is "streets, highways, alleys and sidewalks, crosswalks and gutters." The legislature has thus given its own definition of what the word "street" in that charter includes. The word "street" has been held not to include "sidewalk." (*Hunnelman v. Utterlee,* 50 Cal. 68; *Dyer v. Chase,* 52 Cal. 440; *Philadelphia v. Lea,* 9 Phila. 106; *Dickinson v. Worcester,* 138 Mass. 555; *City of Detroit v. Putnam,* 45 Mich. 263, 7 N. W. 815.) If the court should hold that the provision of section 93 of the city charter for liability on account of the condition of any "street" includes liability on account of the condition of any "sidewalk," defendant is nevertheless not liable in this case, because there had never been any sidewalk beyond the point where the sidewalk in question terminated, and the absence of continuation of which caused the accident. As the liability would arise only because of the condition of the sidewalk, and the accident happened, only, because of the absence of a sidewalk, this action will not lie. (*Williams v. City of Grand Rapids,* 59 Mich. 51, 26 N. W. 279; Dillon on Municipal Corporation, sec. 494; *City of Lansing v. Toolan,* 37 Mich. 152; *Marquette v. Cleary,* 37 Mich. 296; *Saulsbury v. Ithaca,* 94 N. Y. 30, 46 Am. Rep. 122; *Urquhardt v. Ogdensburg,* 91 N. Y. 67, 43 Am. Rep. 655; *Hines v. Lockport,* 50 N. Y. 528; *Mills v. Brooklyn,* 32 N. Y. 489; *Shietart v. City of Detroit,* 108 Mich. 309, 66 N. W. 221.) The eyesight of the plaintiff, Mary Giffen, was defective at the time of the accident and had been so for a long time. Her husband, John Giffen, was walking behind her some few feet at the time of the accident. He was not protecting her as he should have done, in view of the well-known condition of the sidewalk, the darkness of the night and her de-

fective eyesight. The contributory negligence either of Mary Giffen or John Giffen is sufficient to defeat the action. She cannot recover if either of them was guilty of negligence which contributed to the injury. (*McFadden v. Santa Ana etc. Ry. Co.,* 87 Cal. 464, 25 Pac. 681; *Pittman v. El Reno,* 4 Okla. 638, 46 Pac. 495; *McGraw v. Friend & Terry Lumber Co.,* 120 Cal. 574, 52 Pac. 1004.) Damage resulting from the wife's decreased ability to labor can only be recovered in an action by the husband alone, and the evidence admitted upon that subject in this case was prejudicial error. It was outside the issues— the complaint claimed no such damages. (*McKune v. Santa Clara Mill etc. Co.,* 110 Cal. 480, 42 Pac. 980; *Tell v. Gibson,* 66 Cal. 247, 5 Pac. 223; *McFadden v. Railway Company,* 87 Cal. 464, 25 Pac. 681; Addison on Torts, 952; *Filer v. New York Cent. R. R. Co.,* 49 N. Y. 47, 10 Am. Rep. 327, *Uransky v. Dry Dock etc. Co.,* 118 N. Y. 304, 16 Am. St. Rep. 759, 23 N. E. 451.) The court erred in refusing to submit to the jury the questions, and each of them, requested by defendant to be submitted to the jury for answer. (*Burke v. McDonald,* 3 Idaho, 296, 33 Pac. 49; *City of Weir v. Herbert,* 6 Kan. App. 596, 51 Pac. 582; *City of Wyandott v. Gibson,* 25 Kan. 236.) The instructions of the court authorizing the jury to consider as an element of damages the disfigurement of plaintiff, also annoyance resulting from disfigurement, were error. (*Chicago & R. Co. v. Hines,* 45 Ill. App. 299.) The verdict should be set aside because of the jury having resorted to the determination of chance in ascertaining the amount of damages toe be awarded. (*Flood v. McClure,* 3 Idaho, 587, 32 Pac. 254; *Gordon v. Trevarthan,* 13 Mont. 387, 40 Am. St. Rep. 452, 34 Pac. 185; *Frick v. Reynolds,* 6 Okla. 638, 52 Pac. 391.)

James W. Reid, for Respondents.

Where by the charter of a municipal corporation, it had power to repair streets and sidewalks and to prevent the encumbering in any manner, "or obstructing the same," held, that it was liable for injuries occasioned by an omission on its part to repair or remove a sidewalk constructed without its authority, which had been for a sufficient length of time to charge it with

notice in so defective a condition as to be dangerous for travel. (*Saulsbury v. Ithaca,* 94 N. Y. 27, 46 Am. Rep. 122; Jones on Negligence of Municipal Corporations, c. 11; Cooley on Torts, 625, 626, and cases there cited.)    The fourth contention of appellant of contributory negligence, sections 206 and 228, and cases cited, in Jones on Negligence of Municipal Corporations, cover this point thoroughly.    When jurors agree each one to mark down the sum he thinks proper to find as damages, and then to divide the total amount of those sums by the number of persons composing the jury, which result should be their verdict, a verdict thus found is irregular and will be set aside, but if such means be adopted merely to arrive at a proper result for the purpose of determining what the verdict shall be and afterward the jury agrees upon such sum as their verdict, the court will not disturb it.    (*Wilson v. Berryman,* 5 Cal. 45, 63 Am. Dec. 78; *Dixon v. Pluns,* 98 Cal. 384, 35 Am. St. Rep. 180, 33 Pac. 268; *Turner & Platt v. Toulumne County Water Co.,* 25 Cal. 398; *Simons v. Mills,* 80 Cal. 120, 22 Pac. 25; *Hunt v. Elliott,* 77 Cal. 588, 20 Pac. 132; *Boyce v. Stage Co.,* 25 Cal. 402.)    The next contention is that the judgment is illegal because made to the wife only.    (Idaho Rev. Stats., secs. 4093; 3 Deering's Code, sec. 370, and notes; *Colvill v. Langdon,* 22 Minn. 565; *Mann v. Marsh,* 35 Barb. 68; *Ackley v. Tarbox,* 31 N. Y. 564; *Wilson v. Wilson,* 36 Cal. 447, 95 Am. Dec. 194; *Sheldon v. Steamship Uncle Sam,* 18 Cal. 526, 79 Am. Dec. 193; *Warner v. Steamship Uncle Sam,* 9 Cal. 697; Pomeroy on Remedies, secs. 242, 244.)

QUARLES, J.—This action was commenced by John Giffen and his wife, Mary Giffen, to recover damages for personal injuries received by the latter owing to the alleged unsafe condition of a certain sidewalk situated in the municipality, defendant herein.    The complaint alleges that "the said sidewalk on said street, opposite what is known as the 'Methodist Church' in said city, was left in a dangerous condition, by having the planks torn off, and a sudden descent and abrupt termination of said sidewalk, so that it became highly dangerous to walk or pass upon it in that condition; and that the said dangerous condition of said sidewalk was wrongfully and negligently, and

with full knowledge of the existence thereof, suffered by said defendant to remain exposed and unimpaired, with no protection around the same, and with no lights or other signals thereat during the night-time to indicate danger during the night" of the date of the alleged injury. The complaint then alleges that while the said plaintiffs were traveling on foot over said sidewalk, and without knowledge or means of knowing of the existence of said defect therein, the plaintiff, Mary Giffen, by reason of such defect, received a fall, whereby she sustained injuries to her damage in the sum of $2,500. The defendant answered. The cause was tried before the court and a jury, and a verdict rendered in favor of the plaintiff, Mary Giffen, in the sum of $800, upon which verdict the court rendered judgment in favor of said plaintiff Mary Giffen, for the sum of $800 and costs of suit, taxed at $82.55. The defendant moved for a new trial, which motion was denied; and from the said judgment, and the order denying a new trial, the defendant appeals, and on appeal the defendant has specified forty-nine errors.

Section 7 of the charter of the city of Lewiston (Special and Local Laws of Idaho, page 148, section 655) provides for "clearing, opening, . . . . and repairing streets, highways and alleys, sidewalks and gutters." Section 93 of said charter (Special and Local Laws of Idaho, page 163, section 721) is as follows: "The city of Lewiston shall be liable to anyone for any loss or injury to person or property growing out of any casualty or accident happening to any such person or property on account of the condition of any street or public ground therein." It is earnestly urged by counsel for the defendant that these provisions in said charter, while making the defendant responsible for injury received owing to a defect in one of its streets, yet that such provisions do not make the defendant liable for injury received through a defect in one of its sidewalks. This contention we regard as technical. The expression "street or public ground" was evidently intended to embrace all public ground within the corporate limits of the defendant city, whether used as a public park, a street, alley or sidewalk. By the terms of the charter, taken as a whole, the control of all public grounds, whether used for a street, alley, sidewalk or other purposes, with-

in the corporate limits of said city, is vested in the defendant, and the defendant made liable for the dangerous condition of the same. The common-law rule exempting a city from liability for the unsafe and dangerous condition of its streets has no application to the case at bar, for the reason that such liability is created by the charter of the defendant city.

The defendant objected to the introduction of any evidence by the plaintiffs, on the ground that the complaint did not state facts sufficient to constitute a cause of action. This contention was based upon the idea that the city was not liable for the unsafe condition of its sidewalks, and this objection is urged with much force in the brief of the appellant, but, for the reasons above given, was properly overruled. We presume that the argument in support of the objection presented to the court below was the same as that urged here.

Appellant contends that the defendant was not liable for the reason that at the point where the sidewalk terminated, and where the injury occurred, there was no defect in the sidewalk, but the absence of any sidewalk. This argument is rather unique when considered with other arguments in appellant's brief. We are first told that the sidewalk is no part of the street, and that, therefore, the city is not liable for injuries received by reason of defects in the sidewalk. Then we are told that, if that part of the street upon which sidewalks are usually constructed is in a dangerous condition, the city is not liable, because there is no sidewalk there. The case under consideration is different from those cases where the sidewalk naturally and necessarily terminates; i. e., the corner of a block in a city. The evidence in this case shows that the injury complained of by the plaintiffs occurred upon that part of a certain street in the city of Lewiston appropriated for the use of pedestrians; that the point where it occurred was the terminus of a plankway which had been laid upon a portion of this sidewalk; that, the terminus of such plankway was not at the corner or intersection of two streets, but distant from any such intersection; that by reason of the elevation of said plankway above the ground at the point where the injury occurred, such sidewalk was in a dangerous condition. The jury concluded from the

evidence before it that such sidewalk at the point where the injury occurred was in a dangerous condition, and that, by reason of such condition, the plaintiff Mary Giffen was injured, whereby she sustained damages to the extent of $800. The appellant urged upon the trial, and also upon this appeal, that the plaintiffs were guilty of contributory negligence, and such as precludes a recovery by them in this case.

The appellant contends that the defendant was entitled to judgment for the reason that the plaintiffs did not allege nor prove the presentation of the claim upon which this action was brought. Section 60 of said charter (Special and Local Laws of Idaho, page 157, section 688) provides: "All demands and accounts against the city must be presented to the clerk with the necessary evidence in support thereof, and he must submit the same to the council, who shall by vote direct whether the same shall be paid or any part thereof, as they may deem it just and legal." This charter provision is unlike that found in most charters, inasmuch as it does not expressly prohibit suit against the city upon a demand until after presentation of a claim to the city council for payment. Said section 60 above quoted was not intended, in our opinion, to apply to cases of torts. This view is strengthened by the fact that section 93 of said charter, above quoted, does not require presentation of a claim growing out of a tort to the city council prior to suit. We conclude, therefore, that said section 60 was intended and does apply to claims upon which actions *ex contractu* may be brought, and that said section 93 is the only provision in said charter affecting or controlling the right of a party injured to sue the city for tort. The correct rule, we think, is laid down by Dillon, in his work upon Municipal Corporations (fourth edition, section 837), in the following language, to wit: "In furtherance of a public policy to prevent needless litigation, and save unnecessary expenses and cost, by affording an opportunity amicably to adjust all claims against municipal corporations of every nature before suit is brought, it is provided in the charters of such corporations that no action shall be maintained upon any claim or demand until the claimant shall first have presented his claim or demand to the common council for allowance. In other

charters it is propided that no action on a contract, obligation, or liability shall be commenced except within one year or other short limitation period after the cause of action shall have accrued. These provisions have been held to be inapplicable to actions for personal torts; yet a similar charter provision, with the addition of the word ["claim" or "demand"] whatsoever, was held to include torts. The failure to comply with such provision constitutes a good defense."

The court instructed the jury that the defendant was required to use reasonable diligence to keep its streets, sidewalks, and other public ground in safe condition. Such instruction was undoubtedly correct. The court of its own motion then gave an instruction defining contributory negligence, and then gave the following instructions: "I instruct you, gentlemen of the jury, that, although, you may believe from the evidence that the city authorities had negligently suffered the sidewalk in question to remain in dangerous condition for walking, still if you further believe from the evidence that this condition of the sidewalk was known to the plaintiffs, or either of them, before they attempted to walk over it, and that they might easily have avoided passing over such dangerous place, then they were not using that reasonable care and prudence to avoid injury which the law requires, and cannot recover in this case." "You are instructed, gentlemen of the jury, that a person has no right knowingly to expose him or herself to danger, and then recover damages which might have been avoided by the use of reasonable precaution; and if the jury believe from the evidence that the plaintiffs, or either of them, before and at the time of the alleged injury, knew of the defect in the sidewalk, and, in going to their house on the night of the alleged injury, could have taken another and safer route, of equal or nearly equal distance, then the jury have the right to consider their failure to take such other route, if such there was, into consideration in determining whether the plaintiffs were at the time of the injury, exercising due care and caution for their own safety. The jury are instructed that when a dangerous place is made in the street by the unlawful act of third parties, unknown or without the knowledge or consent of the city authorities, the city cannot be deemed negligent until

the knowledge or notice of such defect is brought home to the officers of the city, unless the dangerous place has existed for such length of time before the injury that the city authorities, in the exercise of reasonable care and diligence, might and ought to have known of its existence." But, notwithstanding said instructions, the court further instructed the jury as follows, to wit: "If you believe from the evidence that the defendant was guilty of negligence in not keeping the sidewalk in question in a safe condition and free from danger, as explained in these instructions, upon the occasion referred to, and that the plaintiff, Mary Giffen, was injured thereby, as alleged in the complaint, and that she sustained damages by reason thereof, and that plaintiffs, or either of them, were guilty of such negligence as contributed to the injury, and without which accident would not have happened, still the defendant would be liable in this case provided you further believe from the evidence that the said defendant, the city of Lewiston, had notice of the danger to which the plaintiffs were exposed, in time to have averted it, and, by the exercise of ordinary, reasonable care and prudence, could have averted the injury." The giving of this latter instruction was duly excepted to by the defendant. Such instruction is contradictory to other instructions given, took from the jury the question of contributory negligence, provided they obeyed it, and disregarded the other instructions. The giving of this latter instruction was palpable error. The instructions, taken as a whole, tended to mislead and confuse the jurors; and it is impossible to determine from the evidence in the case, and the instructions given, as a whole, whether or not the jury found that the plaintiffs were guilty of contributory negligence or not. The evidence upon this point was conflicting.

The defendant requested the court to give instruction No. 15, in the following words: "The court instructs the jury that if a person knows there is a dangerous place in a sidewalk, and attempts to use the walk, and in consequence of the darkness of the night, or by reason of the defective eyesight, such person is unable to determine the exact location of the point of danger, such person has no reason to complain by reason of the fact of inability to cross the place in safety." This request was re-

fused by the court, to which refusal the defendant duly excepted. The refusal to give such instruction, we think, was proper, as it was not applicable to the facts in the case at bar. Although the plaintiffs may have known of the defect in the sidewalk complained of, yet such knowledge would preclude the plaintiffs from recovering in the case at bar, provided the plaintiffs used reasonable care to prevent injury. To rebut the idea of contributory negligence, the plaintiffs introduced evidence showing that the injury occurred at night; that the night was very dark; that plaintiffs were carrying a lantern, lighted up to a short time previous to the accident, but which had been extinguished by a gust of wind just prior to the time the accident occurred, leaving the plaintiffs in total darkness; and that while walking along the sidewalk in a careful, leisurely manner, the plaintiff, Mary Giffen, who was slightly in advance of her husband, the other plaintiff, unexpectedly reached the end of the said plankway, stepped off, and fell, receiving severe injuries. The plaintiffs denied knowledge of the condition of said sidewalk, but on this point there is conflicting evidence. The two primary questions for the jury to pass upon, and upon which the court should have instructed them, are: 1. Was the said sidewalk in a dangerous condition, resulting from a lack of the exercise of reasonable care on the part of the officials of the city of Lewiston? And 2. Did the plaintiffs, at the time and place where the accident occurred, use reasonable care to avoid accident?

The instructions, taken as a whole, although containing much unnecessary verbiage and redundancy, gave the law of the case fairly to the jury, with the exception of the last instruction quoted above, which tended to eliminate the question of contributory negligence. While the language of section 93 of said charter, making the defendant city "liable to anyone for any loss or injury to person or property growing out of any casualty or accident happening to any such person or property on account of the condition of any street or public ground therein," is very broad, yet we do not think that it was the intention of the legislature to deprive the defendant of the ordinary defense of contributory negligence. Suppose the defendant, as is

usual, should excavate a large cistern in one of its streets, us-
ing reasonable diligence to prevent accident to travelers upon
such street, and, while such cistern is under process of con-
struction, a traveler upon such street, either in the daytime or
at night, sufficient natural or artificial light being there to en-
able him to see the excavation, should, seeing the excavation, in-
tentionally walk into it, whereby he was injured greatly; would
it be held, under the provisions of such charter, that the defend-
ant would be liable to such traveler? We think not. To so
hold would violate an ancient maxim, "No one shall take ad-
vantage of his own wrong." On the other hand, if the defend-
ant should permit this excavation, or any other obstruction or
defect, to remain unguarded, without signal lights pointing to
the danger, the defendant would be liable to a passer-by, who,
in the dark, should be injured by reason of such condition of
the street, although, perchance, such injured party may have
seen at some prior time such defective condition of the street.
We think the rule is this: Although the plaintiffs may have
previously seen the defect in the sidewalk in question, such no-
tice would require them to use reasonable diligence to avoid ac-
cident by reason of such defect, but would not preclude them
from a recovery in case of accident, and while using reasonable
diligence to prevent such accident. It is a duty imposed by its
charter upon the defendant to keep all of its highways, includ-
ing streets, sidewalks, and alleys, in reasonably safe condition
for travel; and a traveler upon any highway of the defendant
who seeks a dangerous defect therein to-day, but who has occa-
sion to travel over such highway at night-time a few days hence,
may well conclude that the defendant has performed its legal
duties, and repaired such defect; and such traveler may recover
for injuries received by reason of such defect, if he uses reason-
able diligence to avoid injury, but could not recover for such in-
jury if he carelessly runs into such danger. To illustrate fur-
ther: say the use of bicycles upon sidewalks is dangerous to
pedestrians; that the defendant permits the use of bicycles upon
its sidewalks; that A, a traveler, is injured upon the sidewalk
by being struck by a bicycle which has noiselessly approached
him from behind, he being unaware of its approach—would it

be a defense to say to A, "You shall not recover damage, because you knew that the sidewalks were dangerous on account of bicycles being used upon them"? Certainly not. Such rule would completely nullify the provisions of section 93 of said charter, quoted. But, knowing that bicycles are used on the sidewalks, A should use reasonable diligence to avoid injury; and he could not knowingly or intentionally run against a bicycle on the sidewalk, and then recover for such injury as he might receive thereby.

In making his opening statement to the jury, counsel for the defendant asked permission to state his views of the law of the case to the jury, which the court refused to permit. The defendant excepted to this ruling of the court, and now assigns said ruling as error. There was no error in said ruling. Counsel, in making opening statements to the jury, are confined to pointing out the issues of fact made by the pleadings, and to a statement of the facts which he expects to prove to sustain his contention.

During the trial, the court, over the objections and exceptions of the defendant, permitted the plaintiff, Mary Giffen, to answer certain questions showing that, by reason of the injury, she could not labor to the extent that she could prior to the accident; and errors 2 to 6, assigned by appellant, are based upon the admission of such evidence. The admission of such evidence was proper. It is alleged in the complaint that, by reason of said injury, the plaintiff, Mary Giffen, "became permanently lame and crippled for life, and has suffered, and still suffers, great mental pain and anguish," etc. Mr. Sutherland, in his admirable work upon Damages (volume 3, at page 259), lays down the rule that loss of capacity to earn money is one of the elements of general damage. In 5 Encyclopedia of Pleading and Practice, under the subject of "Damages," after showing the rule on this point to be conflicting, the text, at page 755, says: "On the other hand, the doctrine has been laid down that loss of earnings and of business engagements is a necessary result of personal injuries, and hence need not be specially pleaded."

But it is urged by the appellant that damages for loss of ability to labor on the part of the wife, caused by an injury of

the kind in question here, can only be recovered by the husband in a separate action brought for that purpose. We cannot assent to this contention. The rule contended for was the rule at common law, and is doubtless the rule now in those states in which the legal identity of the wife is submerged into that of the husband, and where the time and service of the wife is not, to an extent, her own, but the property of the husband. Under our statutes, the time and earnings of both husband and wife are community property, not owned exclusively by the husband, but the common property of both. In the case at bar, both husband and wife are necessary parties. The judgment should run to both. The damages, after recovery thereof, become the common property of both. But should the marital relation terminate, either by death or otherwise, the wife would be entitled to recover for such injuries, and any damages so recovered by her after the termination of the marital relation would belong to her exclusively. Then, it is the policy of our code to prevent multiplicity of actions. Any damage, general or special, recovered by the husband during the marital relation for loss of time or capacity to labor by the wife in cases like the one at bar becomes community property. Then, our statutes provide that "the earnings and accumulations of the wife and of her minor children living with her or in her custody, while she is living separate from her husband, are the separate property of the wife." (Rev. Stats., sec. 2502.)

At the close of the trial, the defendant requested the court to submit to the jury, by way of special verdict, the following questions, to wit: "First question: Would the injury complained of in this action have happened but for the want of ordinary care on the part of plaintiff John Giffen? Answer: ——. Second question: Would the injury complained of in this action have happened but for the want of ordinary care on the part of plaintiff Mary Giffen? Answer: ——. Third question: Have you allowed any damages in your verdict on account of diminished ability of Mary Giffen to labor and assist her husband, or on account of any expense to him, and, if so, how much have you so allowed? Answer: ——. Fourth question: Did the planks as originally placed at the end of the sidewalk, and slop-

ing to the ground, make the walk reasonably safe for the public use at that place? Answer: ——. Fifth question: Had those planks at the end of the sidewalk, and sloping to the ground, been disturbed or disarranged by the time of the accident to Mary Giffen, from the situation in which they were originally' placed there? Answer: ——. Sixth question: Did the defendant city have any notice of such disturbance or disarrangement (if there was any) of said sloping planks, before the accident to Mary Giffen? Answer: ——. Seventh question: Was the plaintiff Mary Giffen guilty of any want of ordinary care and prudence, however slight, which contributed to produce the injury? Answer: ——. Eighth question: Was the plaintiff John Giffen guilty of any want of ordinary care and prudence, however slight, which contributed to produce the injury? Answer: ——." Which request the court refused, to which ruling the defendant excepted, and upon this action of the court the defendant has assigned eight errors (41 to 48, inclusive); and, to support his position, counsel for appellant cites us to the case of *Burke v. McDonald,* 2 Idaho, 679, 33 Pac. 49. The issues in this case were not of a complicated nature, or were not so to the extent contemplated in the decision in *Burke v. McDonald, supra.* The submission of special findings to the jury is, to some extent, a matter of discretion with the trial court. But when the issues are complicated, and the questions to be determined by the jury are so numerous or complex that they tend to confuse the jury, it is an abuse of such discretion to refuse to submit interrogatories to the jury. Neither side has an absolute right to have interrogatories submitted in that particular form which may be requested by such party. When either side requests the submission of interrogatories, the trial court should, when the issues are complicated, carefully examine the interrogatories, and see that they cover the material issues in dispute and no others, and that they are plainly and concisely put. The practice of submitting interrogatories to the jury where the issues made by pleading and proof are complicated is a good one, and should be encouraged in every such case when requested, and also where the material questions are numerous although the issues are not complicated, provided

that, in the opinion of the trial court, a special verdict would assist in arriving at a correct conclusion. Special findings often enable the court to correctly apply the law when, but for such findings, a new trial would be necessarily granted. Thus, in many cases, the ends of justice are promoted, and litigation expedited by special findings. Special findings submitted by proper interrogatories in the case at bar would have been proper; but those requested by defendant were too numerous, and should have been more concise. It would have been proper for the court to have simplified the interrogatories, so as to have covered the material issues in a plain, simple manner, and then have submitted them to the jury.

On the trial, the plaintiffs were permitted, over the objections and exceptions of the defendant, to introduce evidence proving that, soon after the accident, the defect in the sidewalk complained of was repaired by the defendant. This was error. Such evidence was not within the issues. The neglect of the defendant prior to the accident was the important question. If the defendant was guilty of negligence by permitting the sidewalk to remain in a dangerous condition its liability for such negligence is neither aggravated nor mitigated by its promptness or tardiness in repairing a sidewalk after the accident.

Touching another error assigned by the defendant, we deem it proper to say that, in the trial of a cause, counsel should refrain from comments upon the motive of opposing counsel in making objections to the introduction of evidence. Counsel on both sides should be kind and courteous to each other, and confine themselves to legitimate argument.

Appellant also contends that the trial court erred in permitting plaintiffs to introduce evidence in chief, after the close of the case, and after defendant had introduced its evidence. This is a matter largely within the discretion of the trial court. But the practice should be discouraged to the extent of requiring the party to show some reasonable excuse, such as ignorance, of the existence of such evidence, or oversight, inability to produce the evidence before closing, or other good cause, before permitting the plaintiff to open his case after having closed it.

The court instructed the jury that, in passing upon the credibility of the witnesses, "they should reconcile all of the different

parts of the testimony, if possible, and that it is only when it is palpable that a witness has deliberately and intentionally testified falsely as to some material matter, and is not corroborated as to such statement by other evidence, that the jury is warranted in disregarding the entire testimony of such witness." The defendant excepted to this instruction, on the ground that it "was an infringement upon the province of the jury." There is nothing in the defendant's contention upon this point.

The trial court did not err in instructing the jury that disfigurement of the plaintiff caused by the injury complained of is an element of damage to be considered by them. Such disfigurement is an element of damage; but annoyance to the plaintiff caused by contemplation of disfigurement is too remote to be considered as an element of damage resulting from personal injury.

It was not error to refuse instruction No. 13, asked by the defendant, it being covered by other instructions which were given.

The defendant also requested the court to give an instruction in the following words, to wit: "If the jury believe from the evidence that the city had provided a good light on the street at the place in question, and it had been affording adequate light at the place in question, and that it was burning the night before the accident, even if the jury should find that from some cause it failed to burn at the time of the alleged accident, the city should not be charged with negligence in the matter of the absence of the light." The court refused to give this instruction, to which refusal the defendant excepted, and the appellant urges here that the refusal to give such instruction was prejudicial error. The instruction as prepared was not proper. It would tend to confuse the jury. The jury might conclude from said instruction that the existence of a light at the place of the accident would be a defense to the action. We are unable to see what effect the existence of a light at the place of the accident, the night before the accident, could have upon the rights of the parties, any more than the repairing of the defect in the sidewalk on the day following the accident would have. The primary ground of liability on the part of the appellant for the injury complained of by the plaintiffs is the defective or danger-

ous condition of the sidewalk. The presence or absence of a light at the place of the accident is only important as tending to throw light on the question as to whether the plaintiffs were guilty of contributory negligence resulting in the injury in question.

The appellant urges that the verdict should be set aside upon the ground that it was arrived at by chance. Five of the jurors made affidavits, each in the same language, apparently one copied from another, to the effect that "the verdict of $800 was arrived at by agreeing that each juror should name the amount which he considered the plaintiffs entitled to recover, and that the amount so named by each juror should be put down, and that the several sums so named be added together, and that the total amount thereof should be divided by 12, the number of jurors trying the case, and that the sum or quotient arising from such division should be the verdict; that the amount of such division was about $875, and they then agreed to make it $800; and that the verdict of $800 rendered by the jury in that case was arrived at in that way, and in no other." A verdict reached in the manner described is a chance verdict, ground for new trial, and the oath of the jurors or any one or more of them is competent, under the express provisions of section 4439 of the Revised Statutes, to impeach such verdict. But two of said jurors made a second and further affidavit in explanation of their first affidavit, and in explanation of the manner in which said verdict was reached, in which it is stated: "After the jury had voted two or three times, the sums voted ranging from the sum of $300 to $2,000, it was proposed that the jury should take a vote, each juror putting down the sum he thought the plaintiff was entitled to, then add all these sums altogether, and divide the aggregate sum by 12, the number of jurors; and this was done, as was then stated, in order to ascertain the average, which said average so obtained was the sum of $875; after which some of the jurors thought the sum should be made $900, and others that it should be made $800, and after discussions it was then agreed to take another ballot, and that those who thought the sum should be $800 should vote that amount, and those thinking that the sum should be $900 to vote that amount.

Upon this understanding, the last and final vote was taken, and the result was that the sum of $800 had a majority of votes cast; and, after this was ascertained, it was then agreed by the jury unanimously to make the sum that should be returned by the jury $800; and this is the way, in detail, in which the verdict of $800 was arrived at." With this explanation of the manner in which the verdict was reached, said verdict could not very well be regarded as a chance verdict. Still, we think that the conduct of the jury in reaching said verdict is, at the least, of doubtful propriety. (See *Flood v. McClure,* 3 Idaho, 587, 32 Pac. 254.)

The appellant urges that the court erred on the trial in permitting the plaintiff John Giffen, while testifying as a witness, to make an explanation of a portion of his testimony. This was not error. The trial court should not permit a witness to act officiously, and voluntary statements from a witness, as a rule, should not be permitted over the objection of the party adversely interested. But it is only fair to the witness, as well as right to the parties, to permit a witness to make any explanation proper to prevent his evidence from being misunderstood, or correct any mistake that he may have made. The witness should, of course, not be permitted to wander outside of the issues, or to make any incompetent, immaterial, or irrelevant statements.

The verdict of the jury was in favor of the plaintiff, Mary Giffen, alone. This was erroneous. The court should have instructed the jury to have amended their verdict so as to find in favor of the plaintiffs, and both of them; and the judgment, whether the verdict was amended or not, should have been that the plaintiffs, John Giffen and Mary Giffen, recover, etc. The judgment is reversed and the cause remanded to the district court for further proceeding consistent with the views herein expressed. Costs of appeal awarded to the appellant.

Sullivan, C. J., and Huston, J., concur.

ON REHEARING.

(December 31, 1898.)

Per CURIAM.—We have examined the petition filed in this case.  The questions raised by the petition for a modification of the decision were considered by the court and the authorities examined.  We are not unmindful that our conclusions differ from those reached by the California court.  Doubtless that court based its decision upon what it conceived to be the true intent and spirit of the statutes of California.  We have done the same, taking the statutes of our state as our guide, and we see no reason for changing our views.  Petition for modification denied.