[No. 3791. Decided April 13, 1901.]

UNION MINING AND MILLING COMPANY, *Appellant,* v. R. U. LEITCH *et al., Respondents.*

MINES AND MINERALS — LOCATION OF CLAIMS — MARKING BOUNDARIES — REASONABLE TIME.

Under U. S. Rev. St. §§ 2320, 2324, which provide that "no location for mining claim shall be made until the discovery of the vein or lode within the limits of the claim located," and that "the location must be distinctly marked on the ground so that its boundaries may be readily traced," the locator of a mining claim is entitled to a reasonable time in which to mark the boundaries of his claim after its discovery.

SAME.

Where the locators of a mining claim posted notices showing the direction and extent of their claim, but did not mark the boundaries on the ground until eight days thereafter, during which interval conflicting claims were filed by other locators who were aware of the prior location, the failure to mark the boundaries of the claim on the ground for eight days after discovery was not an unreasonable time, when the locators were compelled by lack of provisions to go to the nearest station where a supply could be procured, and did so, in the belief that they had a reasonable time to complete their location of their claim, one corner of which was almost inaccessible, owing to the roughness of the country.

Appeal from Superior Court, Whatcom County.—Hon. HIRAM E. HADLEY, Judge. Affirmed.

*Jeremiah Neterer* and *Denny & Hulbert,* for appellant.

*Elmon Scott,* for respondents.

The opinion of the court was delivered by

MOUNT, J.—The facts in this case are briefly as follows: The Calamity quartz claim was located in an unorganized mining district in Whatcom county, Washington, on August 19, 1897, by the defendants, who, at the time of the discovery, erected a monument at the point of discovery on the south end of the claim and posted thereon a notice claiming 1,500 feet in a northerly direction from the post, 300 feet west, and the same distance east. The said locators did not mark the boundaries on said claim until the 27th day of August. On the 22d of the same month the plaintiff's grantors located four claims known as the "Union," the "Union Extension," the "Copper Queen," and the "Copper Queen Extension," so as to overlap the north end of the Calamity, as shown by the following diagram:

At the time of the location of these latter four claims, the locators knew of the location of the Calamity, but did not know the exact location of the lines thereof. The whole party, consisting of some sixteen men, thirteen of

whom were the locators of this group, and the other three
locators of the Calamity, had traveled into the district
together, but each party located independently of the
other.   After the defendants had erected the monument
and posted the notice of location on the Calamity claim,
in the evening of Sunday, the 19th day of August, on the
next day they located some nine other claims in the same
vicinity in the same way.   On the following day,—Tues-
day,—all three left the locations thus initiated and did not
return until the 27th, when the boundaries of the Calam-
ity claim were marked on the ground.   The excuse given
for this delay is that their provisions ran out, and they
were compelled to go to the nearest supply station for
provisions, which required the intervening time.   On the
22d plaintiff's grantors located the group of four claims
above named without the knowledge of the locators of the
Calamity.   It is conceded that the annual assessment
work has been done since location by each of the parties
hereto on all of said claims.   In the subsequent workings
the interests of the parties conflicted, and suit was brought
by plaintiff to enjoin defendants from interfering with the
minerals and work of plaintiff on the group of four claims
named.

Several questions of minor importance are argued in
the briefs, but the question decisive of the case, and upon
which all the others depend, is, did defendants, after dis-
covery, have a reasonable time in which to mark the
boundaries of the Calamity claim, so that the same might
be readily traced upon the ground?   And, if so, was eight
days, under the circumstances, a reasonable time?   At
the time of the discovery in question, there was no law
of the state defining the time within which the boundaries
should be marked, or how they should be marked upon the
ground, nor was there any local rule or custom in the dis-

trict. The decision of this question therefore depends upon the construction of the United States statutes governing the subject. Section 2320, U. S. Rev. St., provides that

"No location of a mining claim shall be made until the discovery of the vein or lode within the limits of the claim located."

Section 2324, Id., provides that

"The miners of each mining district may make regulations not in conflict with the laws of the United States, or with the laws of the state or territory in which the district is situated, governing the location, manner of recording, amount of work necessary to hold possession of a mining claim, subject to the following requirements: The location must be distinctly marked on the ground so that its boundaries may be readily traced.   .   .   ."

No exact time is limited within which the marking shall be done. Appellant, in its brief, relies upon the case of *Newbill v. Thurston,* 65 Cal. 419 (4 Pac. 409), and *Patterson v Tarbell,* 26 Ore. 29 (37 Pac. 76), which hold that the discoverer must immediately locate his claim by distinctly marking the same on the ground so that the boundaries may be readily traced; and in default thereof a subsequent location, peaceably made, will prevail against a prior discoverer. This construction of the United States statutes is a strict construction, and can be correct only upon the theory that congress intended the marking to be done without any delay. If this construction is correct, viz., that congress intended the marking to be done immediately, then neither the miners nor the states could, by any rule or law, extend the time for the marking, because such rule or law would be in conflict with the United States statute. It is generally conceded that the legislature of the state may fix a time for marking the boundaries after discovery, and since the decisions named above

every mining state, with the possible exception of the state of Oregon, has passed a law fixing the time within which such marking shall be done. The decisions above referred to overlook the general rule that, where no time is limited for the doing of an act, a reasonable time therefor is impliedly given. Mr. Lindley, in his work on Mines (at § 339, vol. 1), says:

"As so much depends upon the locator determining the position of his vein in the earth and the course of its apex, and the consequences of a failure to make his location and establish his end lines, as the law contemplates, being accompanied with such serious results, it would seem that congress never intended to compel the discoverer to immediately proceed at his peril with the marking of his boundaries. The posting of a preliminary notice, though not specially authorized by statute, should be sufficient to protect the discoverer for a reasonable time, at least, within which he might determine approximately the all-important facts upon which the value of his property to a great degree depends."

And (at §372):

"In the absence of state legislation or district regulation, it has been held, in California, that while a party in actual possession, proceeding with diligence to mark his boundaries, would be protected as against a stranger attempting to relocate, yet, strictly speaking, no time is allowed to the locator to complete his location by marking it on the surface. This view is also adopted by the supreme court of Oregon. But, as heretofore indicated, the circuit court of appeals for the ninth circuit, upon the same state of facts presented in one of the California cases, declines to accept the doctrine of the California courts, but follows the rule announced by the supreme courts of Nevada and Idaho, and the manifest intent of the law as suggested by the supreme court of the United States and by the courts of last resort in Colorado and South Dakota. It is unnecessary to here repeat what we have said on this subject in a preceding section. For the reasons therein

suggested, we are of the opinion that the rule announced in California is opposed to both the spirit of the law and the weight of authority;" citing *Doe v. Waterloo M. Co.,* 70 Fed. 455; *Gleeson v. Martin White M. Co.,* 13 Nev. 442; *Burke v. McDonald,* 2 Idaho, 646 (33 Pac. 49); *Erhardt v. Boaro,* 113 U. S. 527 (5 Sup. Ct. 560); *Murley v. Ennis,* 2 Colo. 300; *Patterson v. Hitchcock,* 3 Colo. 533; *Marshall v. Harney Peak Tin M. Co.,* 1 S. Dak. 350 (47 N. W. 290).

The authorities cited bear out the conclusions of the learned author, and, in our opinion, his conclusions are correct. As to what is a reasonable time is a question of law, and depends upon the circumstances of each particular case. Counsel argue that, because defendants located nine other claims upon the following day, they could and should have completed the marking of the boundaries of the Calamity immediately. This fact, while it may be considered as an indication of abandonment or want of good faith, is not conclusive of either. The defendants might have rested on that day, or they might have started for supplies, as they did on the following day. The result, in any event, would have been the same, for the overlapping claims were located on the 21st, 22d, or 23d, without the knowledge of defendants, and after knowledge on the part of the plaintiff's grantors that the Calamity had been located, and after they had read the description thereof on the notice. The law held the defendants to reasonable diligence. The country where the Calamity was located was rough, and at one corner inaccessible. The defendants, thinking they had a reasonable time to complete their location, being without provisions, were at liberty to devote a short time to other necessities. Good faith demanded of plaintiff's grantors that they should make inquiries of the defendants whether they intended to follow up their location or abandon the same, or at least

wait a few days before locating an adverse claim thereon. We are of the opinion that eight days, under the circumstances, was not an unreasonable time within which defendants should mark the boundaries of the Calamity claim on the ground, and that defendants' location was therefore prior in time to that of plaintiff's grantors.

We have carefully examined the record in the case, and conclude that the facts as regards the existence of mineral and discovery thereof prior to the location and the recorded notice and amendment thereof are in accord with the findings of the lower court.

The judgment will therefore be affirmed.

REAVIS, C. J., and FULLERTON and DUNBAR, JJ., concur.