ALEXANDER MARTIN *vs.* HARRISON B. MASON.

Hancock.   Opinion December 7, 1886.

*Logs with same mark.   Trover.   Conversion.   Demand.*

A and H, each, owned a lot of logs of the same kind, quality and value, and bearing the same mark.   H (and another party) contracted to saw A's logs

at the same mill where his own were to be manufactured. The logs became intermixed without the fault of either party. *Held*: That A was entitled to his proportional part of the lumber manufactured from all the logs, and that if H converted to his own use more than his proportional part of the lumber, he would be liable in trover for the same without a special demand.

## ON EXCEPTIONS.

Trover to recover the value of a certain quantity of logs claimed by the plaintiff to have been converted by the defendant.

At the trial the presiding justice instructed the jury as follows :

(1.) "We find these two gentlemen each with an interest in a body of logs of the same mark. As soon as they ascertain this fact it is the duty of each in justice to the other and everybody, to take extra measures for the care of his own logs, and to avoid trespassing upon the rights of others. And they are bound, if they can not make mutual arrangements to distinguish their logs, to keep them apart so that they will not become mixed. Now, in this case, I will give you this rule : If, as soon as this similarity of marks was ascertained by the two parties, it appears to you that Mr. Martin undertook by arrangement, or that he undertook and gave notice accordingly, and that it was understood by the other side that he undertook to change the mark upon his logs, and he gave the other side to understand that he was going so to do and would so do, and in pursuance of that arrangement between the two he undertook to do it, then he thereby gave the other party to suppose that all of his logs would be so changed, and if he allowed any of his logs to remain without the change and allowed them to run without any care on his part into the river, and if, without any care on his part or any oversight on his part, they escaped, and without any fault of Mason's or any design on his part, got mixed with Mason's logs, Mr. Mason would not be obliged at his peril to separate these logs from his own, but he might assume that they were his logs and Mr. Martin could not afterwards sue him for the value of them, at least until he, Martin, had made a demand upon him for the logs."

The presiding justice further instructed the jury, as follows :

(2.) "So it is simply this : If you should find that Martin,

after talking with Mason as to what should be done, and it was finally understood either by language or words in any way, that this difficulty was to be settled, and this embarrassment got rid of by Martin changing the mark upon his logs, and he undertook to do it, and Mr. Mason so understood it, and Mr. Martin did change part of them, and he left part unchanged to run in the river loose, without any care on his part to keep them separate from Mason's, and they got mixed with Mason's logs without his fault, he would have a right to regard them as his logs, at least till demand was made, and no proof of any demand being made in this case, Mason would not be liable in this case, whatever he might be under other and different state of affairs for using those logs as his own."

The presiding justice further instructed the jury as follows:

(3.) "I instruct you that the fact that these logs came into Mason's boom is not proof enough, because they may be there now for that matter. It is not enough that they went into his mill, or that they were sawed by him, but to make out the conversion it must appear that after they were sawed Mason appropriated the lumber to his own use by selling it, hauling it away for himself, or putting it upon his own pile, thereby indicating that he took it for himself."

The plaintiff alleged exceptions to these instructions.

*Wiswell and King,* for the plaintiff, cited: *Clough* v. *Whitcomb,* 105 Mass. 482 ; 30 Maine, 242 ; 2 Parson's Contracts, 137 ; 2 Kent's Com. 365, note; *Heselton* v. *Stockwell,* 30 Maine, 237 ; *Ryder* v. *Hathaway,* 21 Pick. 298 ; 54 Am. Dec. 596 note ; 12 Maine, 243 ; 49 Maine, 383 ; 51 Maine, 160 ; 42 N. Y. 549 ; 92 Ill. 218 ; 3 Cal. 53 ; 21 Pick. 559 ; 7 Gray, 158.

*John B. Redman,* for the defendant.

DANFORTH, J. In this case the first and second instructions excepted to, are in substance the same. They were given upon a supposed state of facts, which, if found by the jury as supposed, would leave them no option but to return a verdict for the defendant, as they did. The language used, so far as it relates to the facts, may be susceptible of different interpretations when

taken by itself. We must, therefore, ascertain its meaning by applying.it, as the jury must have done, to the evidence and admitted facts as shown by the case.

The case shows that during the same winter, the two parties were separately engaged in cutting logs upon Union river. The logs cut were in all respects, including the value, similar, and each party used the same mark, being ignorant of the use of it by the other. When this fact became known, Mason (the defendant) requested the plaintiff to put an additional mark upon his logs, which he refused to do. He did, however, subsequently attempt to make the change, and succeeded in part, but before completing the work the logs escaped from the boom and run down the river, without any fault on his part. Of this attempt on the part of the plaintiff the defendant had knowledge.

The logs of the two parties run down the river the same seasons. Subsequently the plaintiff's logs were sawed under a contract by the thousand, at a mill owned by the defendant and one Cushman. The defendant testified that he presumed that all the logs which came to the mill with the unchanged mark " were sawed for him, and that he received, shipped and sold the lumber." The plaintiff claimed that either by accident or design, a large portion of his lumber had not been accounted for, and for this portion he claims to recover in this action.

To these facts must the instructions be applied, by them must their accuracy be tested. With these facts before them the jury must so have understood and acted upon the instructions given. Nor does it require any great straining of the language used by the court to so understand them. There was an attempt on the part of the plaintiff, after talking with the defendant, partially successful, to put an additional mark upon his logs, and the defendant might have inferred that the " difficulty was to be settled in that way." But the case not only fails to show any contract, or even promise to make the change, but distinctly negatives any such supposition. Nor does it appear that any representations were at any time made to defendant that the change in the mark had actually been made, so as to raise any question of estoppel. The plaintiff did leave a " part of his logs

with the mark unchanged to run loose in the river, without any care on his part to keep them separate from Mason's." But that want of care was under such circumstances as to show no fault on his part, and the case so finds.

So far, it appears affirmatively that the plaintiff was not in fault for any mixture of the logs, if any took place before their arrival at the mill. Nor does it appear that up to that time any fault rests upon the defendant. Under the circumstances attending the cutting and running these logs, the same rights and obligations would rest upon each party; and from the facts in the case, if the mixture occurred before their arrival at the mill, neither party would forfeit any right to the logs to the other, but each might claim, and would be entitled to, his specific quantity of the lumber, though he might not be able to identify his specific logs. Hence the instruction that under the given facts the defendant " would have a right to regard the logs as his," even without a demand, must be deemed erroneous. *Loomis* v. *Green*, 7 Maine, 386; *Hesseltine* v. *Stockwell*, 30 Maine, 237; *Ryder* v. *Hathaway*, 21 Pick. 298; *The Idaho*, 93 U. S. S. C. 585; 2 Kent, (12th ed.) 364.

True, the instruction does not necessarily imply that the plaintiff, under the given facts, had forfeited all title to his logs, but it must mean all that is said in the first instruction, that the defendant " would not be obliged at his peril to separate these logs from his own, but he might assume that they were his logs . . . at least until demand was made." But if he could assume they were his until demand, he could make any conversion of them without liability, and in the second instruction the jury are told that in this case the defendant would not be liable in the absence of any proof of a demand. But if the plaintiff had not forfeited his title to his logs, it is clear from the authorities cited, especially *Ryder* v. *Hathaway*, that in such case any use of the property inconsistent with the owner's title, will prove a conversion without a demand and refusal. In this case the defendant admits that all the logs which came into his mill without the additional mark " were sawed for, and received, shipped and sold by him." If this included any of the plaintiff's

logs, it would certainly be a sufficient conversion to enable the plaintiff to recover for so much of his lumber of the unchanged mark as he can prove went into the mill and has not been accounted for.

The third instruction, though unobjectionable in itself, does not purport to supersede, or in any way modify the second. It does not appear whether it was given as applicable to the same or a different state of facts; nor were the first and second withdrawn. They must, therefore, stand as they are, and thus standing, must be deemed erroneous.

The case seems to assume rather than to show, any confusion of these two lots of logs, and if such mixture did occur, leaves it uncertain whether before or after their arrival at the mill. If after, an additional obligation would devolve upon the defendant by virtue of his contract for the sawing. If not already mixed before the arrival, it would be his duty to keep them separate, and if he did not succeed, he might not perhaps forfeit his logs, but it might to some extent change the burden of proof or the amount required to prove a conversion.

*Exceptions sustained.*

PETERS, C. J., WALTON, EMERY, FOSTER and HASKELL, JJ., concurred.