(November 20, 1912.)

PETER NORMAN, Respondent, v. ROSE LAKE LUMBER CO., a Corporation, and the FEDERAL MINING & SMELTING CO., a Corporation, Appellants.

[128 Pac. 85.]

COMPLAINT — CAUSE OF ACTION — DEMURRER — COMMINGLING OF STULL TIMBER—ACT OF GOD—FLOOD OR HIGH WATER—SPECIAL VERDICT— RIGHTS OF OWNERS—STATUTORY CONSTRUCTION.

(Syllabus by the court.)

1. *Held,* that the complaint states a cause of action.

2. Personal property alleged to have been converted should be described in the complaint with reasonable certainty, and the quantity and situs thereof should be alleged at the time of conversion.

3. Under the provisions of sec. 4397, Rev. Codes, in an action for the recovery of money only or specific real property, the jury in their discretion may render a general or special verdict, and in all other cases the court may direct the jury to find a special verdict in writing upon all or any of the issues.

4. Where parties had stull timber and logs in the Coeur d'Alene river and a rise or flood in the river occurred and carried such timber down the river and created a jam composed of about six million

feet of logs, board measure, and 500,000 linear feet of stull timber, without any fault on the part of either of the parties, and the Rose Lake Lumber Company had about 85,000 linear feet of stull timber, unmarked, in said jam, and the plaintiff had 8,876 feet of stull timber therein, which had an ax mark thereon, and none of such stull timber was marked or branded with a registered mark or brand, and the Log Owners' Association took charge of said jam and separated it, and 30,854 linear feet of such stull timber was turned over to the lumber company, and the lumber company sold the same to the Federal Mining Company, the plaintiff would only be entitled to recover the value of his proportionate part of the stull timber turned over to the lumber company by the Log Owners' Association, in addition to the value of the stull timber that he had particularly identified as his own.

5.  *Held*, that the court did not err in refusing to give certain requested instructions.

6.  Under the provisions of sec. 1504, Rev. Codes, all prize logs must be divided between the owners in proportion to the number of logs owned by each, and prize logs are defined to mean such logs as bear no mark or marks and all logs bearing marks not recorded or claimed within one year after any general drive.

APPEAL from the District Court of the Eighth Judicial District, in and for Kootenai County.   Hon. Robert N. Dunn, Judge.

Action to recover for certain stull timber alleged to have been appropriated to the use of defendants.   Judgment for the plaintiff.   *Reversed.*

Featherstone & Fox, for Appellants.

In an action for conversion, it is necessary "that the goods claimed to have been converted should be described with convenient certainty in order that the jury know what is meant and in order that the defendant may be protected from another action based upon the same cause of action."   (21 Ency. Pl. & Pr. 1068; 38 Cyc. 2067; *Edgerly v. Emerson,* 23 N. H. 555, 55 Am. Dec. 207.)

Neither one can claim from the other the total amount of his goods, if any of the goods so intermingled are lost while intermingled.   Both parties must bear their proportionate loss.   (*Martin v. Mason,* 78 Me. 452, 7 Atl. 11.)

McFarland & McFarland, for Respondent.

Respondent sufficiently described his property, so as to put appellants upon their notice as to just what property had been converted by them, and an examination of appellants' pleadings and their evidence conclusively shows that they had sufficient notice of the character of the property alleged by respondent to have been wrongfully converted by them. (33 Cyc. 2067; 47 Am. Dig., "Trover and Conversion," sec. 194; *Greenebaum v. Taylor,* 102 Cal. 624, 36 Pac. 957; *Crocker v. Hopps,* 78 Md. 260, 28 Atl. 99.)

It is the province of the court to determine what particular facts the jury shall find specially, and neither party has a right to dictate the terms of such question, nor does error lie on the refusal of the court to comply with such dictation. (*Lufkins v. Collins,* 2 Ida. 256, 10 Pac. 300.)

SULLIVAN, J.—This action was brought against the Rose Lake Lumber Co. and the Federal Mining Co., two corporations. It is alleged in the complaint that the plaintiff, on or about the first day of November, 1909, was the owner and in the possession of certain timber described as stulls which was lying in the Coeur d'Alene river in Kootenai county; that the defendants, without any right, wrongfully and unlawfully took and converted said stull timber and loaded it on cars, and transported it from said county to some point in Shoshone county, state of Idaho, and that said timber was of the value of $547.28, and prayed judgment for that amount, to which complaint the defendants interposed separate demurrers, which demurrers were overruled and separate answers were filed, putting in issue the material allegations of the complaint. The case was tried by the court with a jury and the jury rendered a verdict in favor of the plaintiff for the sum of $400, and judgment was entered thereon. A motion for a new trial was denied and this appeal is from both the judgment and the order denying a new trial.

(1) The appellant assigns as error the action of the court in overruling the demurrers to the complaint. One ground

of those demurrers was that the complaint did not state facts sufficient to constitute a cause of action. As the complaint alleges that the plaintiff was the owner of said stulls and that the defendants took them without his consent and unlawfully converted them to their own use, and that the value of said timber was $547.28, the complaint states a cause of action.

(2) Another assignment of error is that the court erred in not sustaining said demurrers on the ground that the complaint is ambiguous, unintelligible and uncertain, and under this assignment of error counsel contend that there is no sufficient description of the timber alleged to have been converted, as it is there alleged that the timber referred to was known as stull timber and did not give the number of linear feet or any other description thereof; that it does not state the quantity of timber or the location or the character or kind of timber converted; that the appellants had a right to know the description of said timber and whether it was branded or unbranded, the kind of timber and the size and length of stulls; that appellants had a right to know these facts in order to have their evidence ready on the trial to establish their defense; and that appellants were compelled to go to trial without having a sufficient description of the timber alleged to have been converted.

In 21 Ency. Pl. & Pr., p. 1068, it is stated that the goods claimed to have been converted should be described with convenient certainty in order that the jury may know what is meant and in order that the defendant may be protected from another action based upon the same cause of action. In 38 Cyc. 2067, it is stated that as a plaintiff in trover does not seek the recovery of a specific chattel or chattels, a general description which states the nature or kind of goods alleged to have been converted, and also the quantity, value or location, will suffice; but a declaration which contains no description of specific property is fatally defective. In the case of *Edgerly v. Emerson*, 23 N. H. 555, 55 Am. Dec. 207, the complaint described the property converted as ''divers goods, to wit, a lot of goods being in a store in Alton.'' That description was held bad for uncertainty. The court said: ''It [the de-

scription] is entirely uncertain, both as to the kind and quantity of goods, and is supported by no case which we have met with.'' The defendants were called upon to defend against the appropriation of certain stulls alleged to be of the value of $547.28. Stull timber is usually sold by the linear foot and the price thereof is increased as the size of the timber is increased, and while it was not necessary to have a particular description of each stull or each piece of timber, the defendants were entitled to have a sufficient description of such timber as would identify it, and if the timber was taken from some particular locality in said river, the plaintiff ought to have advised them of the place from whence it was taken. Said complaint is uncertain in not alleging the place from where the timber was taken and the amount or quantity of the timber so taken. The court should have sustained said demurrers on the ground that said complaint was unintelligible and uncertain, so far as the quantity and description of said timber was concerned.

(3) It is next contended that the court erred in refusing to submit to the jury for their answers eleven interrogatories proposed by appellants. On the trial the evidence showed that the respondent was the owner of 8,876 linear feet of stulls contained in a boom in the Coeur d'Alene river, near the town of Dudley, Idaho, which is a few miles above Rose Lake, Idaho, at which point the appellant, the Rose Lake Lumber Co., maintains a sawmill; that said company had 15,000 linear feet of stulls at Dudley, and between Dudley and Rose Lake, ten booms, each containing on an average 7,000 linear feet of stulls or a total of 85,000 linear feet of unbranded stulls; that on or about the first day of February, 1909, high water suddenly came, and, owing to the heavy flow of ice, about six million feet, board measure, of saw-logs and 500,000 linear feet of stull timber came down said river and lodged against a point of rocks in front of said Rose Lake mill and caused a jam. Among the logs in that jam was the respondent's stull timber, the value of which is sought to be recovered in this action. The Rose Lake Lumber Co. endeavored to effect a sorting of the jam, but the Coeur

d'Alene Log Owners' Association interfered by means of an injunction and proceeded to sort the logs in the jam. After such sorting, 30,854 linear feet of stulls were turned over to the Rose Lake Lumber Co. by said Log Owners' Association, among which was a part of the stulls belonging to plaintiff. The balance of the 85,000 feet of unbranded stulls which the Rose Lake Lumber Co. had and which were in the jam were lost in the river or taken possession of as prize logs by said Log Owners' Association. After respondent's logs went into said jam, he had three conversations with an officer of the Rose Lake Lumber Co. relative to his said stull timber, and demanded of the company his stulls. It appears that the appellant, the Federal Mining & Smelting Co., bought all of the stull timber which was delivered by said Log Owners' Association to the Rose Lake Lumber Co., which timber was towed back from Rose Lake to Dudley and there loaded on cars and shipped. The only marks on said stull timber belonging to respondent were simply ax marks, a "I" on some of them and a "V" on others, which were not registered brands. Said marks were made for the purpose of keeping track of how many stulls each man made in the woods. The respondent did not know nor introduce any evidence to show how many of his stulls were delivered by the Log Owners' Association to the Lumber Company, nor how many were towed back from Rose Lake to Dudley and shipped. He did not know how many of the stulls were lost in the jam. The respondent testified that the market price of said stulls at that time was as follows: 4 cents for stulls 8 in. in diameter, 6½¢ for 10 in., 7¢ for 12 in., 9¢ for 14 in. and 10¢ for from 16 to 18 in. It also appears that the respondent did not have much knowledge as to the market value of said stulls, and it appears from the evidence of the appellants that the market price of stulls at that time was 1½¢ per linear foot for those 6 in. in diameter, 2½¢ for 8 in., 3½¢ for 10 in., 5¢ for 12 in., 6½¢ for 14 in., 8¢ for 16 in., 10¢ for 18 in., and 12¢ for 20 in.

It appears from the evidence that the Log Owners' Association, which attended to the sorting of logs in said jam, took

possession of all of the logs in the jam, and it was contended that as the Rose Lake Lumber Co. had 85,000 linear feet in said jam and the respondent had 8,876 linear feet, and the Rose Lake Lumber Co. recovered only 30,854, at most the respondent would be entitled to recover from them only his proportionate part of the stull timber turned over to said company by the Log Owners' Association. It also appears from the evidence that it cost one and a half cent per linear foot to tow said stulls back from Rose Lake to Dudley and place them upon the cars.

Upon that evidence the interrogatories referred to were proposed, which were in regard to whether the stulls were converted before or after the formation of the jam or prior to or after the stulls were sorted out of the jam; how many stulls belonging to the plaintiff were received by the defendants, or either of them, from the Log Owners' Association after the logs had been sorted; how many stulls belonging to plaintiff did the lumber company or the mining company tow back to Dudley; how many stulls belonging to plaintiff did the lumber company load at Dudley and how many were shipped to the mining company, and what was the market value per linear foot of the 8, 10, 12, 14, 16 and 18 inch stulls; what was the price for loading the stulls from the river on to the cars per linear foot; what was the cost of sorting and towing the unbranded stulls which came out of the jam to Dudley; did the plaintiff make a demand upon the defendants. or either of them, for the return of said stulls, or their value, stating the amount and kind of stulls and their value, and if the jury found that the defendants converted stulls belonging to the plaintiff, what amount of stulls, linear foot measure, did the defendants convert, and what was the size of such stulls and what the total value of the same.

Under the provisions of sec. 4397, Rev. Codes, in an action for the recovery of money only, or specific real property, the jury, in their discretion, may render a general or special verdict and in all other cases the court may direct the jury to find a special verdict in writing upon all or any of the issues. This is an action for the recovery of money only, and under

the statute it is in the discretion of the jury whether they render a general or special verdict. Of course, if the court directed the jury in such a case to bring in special findings, the jury would no doubt do so.

In *Burke v. McDonald,* 2 Ida. 679, 33 Pac. 49, the court held that the discretion of the court in submitting questions to a jury was not absolute, but must be properly exercised, and that it would be error to refuse to submit special issues when a particular request therefor is made and the issues are such as to make their special submission desirable.

In the case at bar, it would have been perfectly proper, and perhaps better, for the court to submit some interrogatories to the jury, but we do not think it was reversible error for the court to refuse to do so. If the evidence showed that the stulls in question were caught in a jam occasioned by a rise in the river, and that the jam was sorted by the Log Owners' Association and only 30,854 linear feet of stulls out of a total of 85,000 feet which the lumber company had in said jam were delivered to them by said association, it does not seem reasonable that the appellants should be held for more than the proportion which 8,876 bears to the number of feet of stulls which the lumber company and the respondent had in said jam, unless the evidence showed that appellants had received more than that proportion of respondent's stulls.

It is true respondent testified that he identified his stulls in the jam. He evidently meant that he saw some of them there,—not each particular timber. He further testified that he identified twenty-six of them on one carload, sixteen on another and nine on another. He thus identified fifty-one of his stulls, but there is nothing in the record to show the size or length of those stulls, and if the Log Owners' Association took possession of his stulls and the appellants did not receive them, appellants ought not to be required to pay for them,—at least not to pay for any more than they received, or respondent's proportional part of the 30,854 linear feet of stulls which were delivered by the Log Owners' Association to the appellant lumber company. The plaintiff testified that his stulls were in said jam, but his evidence does not show

that the association turned all of them over to the lumber
company.  It no doubt would have been better to have sub-
mitted some interrogatories to the jury, as it would then
be made clearly to appear how and on what basis the jury
arrived at a verdict of $400 for the respondent.  But we
are not inclined to reverse this case on the ground that the
court refused to require the jury to answer said interroga-
tories.  The evidence clearly shows that there was a com-
mingling of said logs by reason of the rise in the river, and
through no fault of either of the appellants or respondent.
In addition to the loss the lumber company sustained by re-
ceiving only 30,854 linear feet of stulls from the Log Owners'
Association, appellants by said judgment are required to pay
for the total amount of stulls that the respondent had which
went into said jam, when the evidence fails to show that they
converted all of them.   If this judgment is permitted to stand,
the appellants must pay the respondent for all of the stulls
he had, when the evidence shows that out of a total of 93,876
feet of stulls owned by the lumber company and the respond-
ent, the lumber company received from the Log Owners' As-
sociation only 30,854 feet, and to require them to pay for
all of the stulls of respondent that went into said jam, with-
out showing that the lumber company received all of them in
said 30,854 feet, or otherwise, would be most unjust.

(4)  It appears from the record that the Log Owners' Asso-
ciation operated or claimed to operate under the provisions
of chap. 32, title 8, Rev. Codes, secs. 1494 to 1505, inclusive,
and took charge of said jam and separated the logs contained
therein, and it is contended that the court erred in refusing
to give appellants' instruction No. 7, which is as follows:

"The jury are further instructed that unless the stulls of
the plaintiff were branded with a registered brand, the same
are in law considered as unbranded logs; and if you find that
these logs became intermingled with others in the jam oc-
curring at Rose Lake, you are instructed that the plaintiff
lost title to the same, and they became prize logs and he cannot
recover.

"A legal brand is one whose diagram and a full and complete written description of which, signed by the owner or claimant, has been recorded in the office of the inspector of logs for the district in which the logs were located. In this case, at Harrison, Kootenai county, Idaho."

Said instruction contemplates that the logs belonging to the respondent within the meaning of said statute were unbranded logs, and therefore became prize logs under the provisions of sec. 1504, Rev. Codes, which section is as follows:

"All prize logs shall be divided between the owners in each subdistrict in proportion to the number of logs owned by each person or company, respectively, in each subdistrict. Prize logs are hereby defined to mean such logs as bear no mark or marks, and all logs bearing marks not recorded or claimed within one year after any general drive. Any person with whose logs or timber in any waters of this state such prize logs or timber shall become so intermixed that they cannot be conveniently separated for the purpose of being floated to the market or place of manufacture, may drive all such logs or timber with which his own may be intermixed toward such market place, when no special or different provision is made by law for driving the same, and shall be entitled to reasonable compensation from the owner for driving such logs or timber, to be recovered after demand therefor on said owner or agent if known; and he shall have a prior lien thereon until thirty days after they arrive at their place of destination to enable him to attach the same; and if the owner thereof cannot be ascertained, the property shall be liable to be sold according to law, and enough shall be disposed of to defray the expenses thereof."

The only marks which the evidence shows the logs of respondent had were a "I" or "V" cut with an ax. It also shows that those marks were not made for the purpose of identifying the logs from any others, but simply for the purpose of keeping track of the number of logs which each man cut in the timber. Said marks were not recorded as required by law, and it is clear from the evidence that the logs bore no mark or marks as contemplated by said section 1504, and

it is contended that to all intents and purposes said logs were unbranded or unmarked, and for that reason the court should have instructed the jury that unless they found the stulls were branded by registered mark or brand, then plaintiff lost his rights therein upon their becoming intermingled in said jam.

If respondent could identify his stulls by marks he had placed upon them, even though such marks were not recorded, he was entitled to recover them. Prize logs, within the definition as given by said section 1504, are such logs as have no marks or brands upon them whatever, or such logs as have brands or marks which are not recorded or claimed within one year after any general drive. Said section has particular reference to logs or timber conveyed by drives on rivers or lakes, and as the logs referred to in this case became commingled by a rise of the river and floating ice therein, without any fault of either party, the equitable way of distributing such logs as could not be identified by marks or brands would be to give to each owner his proportionate share of said logs according to the quantity of logs he had in such jam. Or, in case such logs were sold as prize logs, then he should have his proportionate share of the proceeds of such sale. In such cases it often occurs that many of the logs are lost entirely. In such a commingling of logs, neither party would forfeit any right to his logs, and each might claim and would be entitled to his specific quantity of timber, though he might not be able to identify his specific logs. It was held in *Martin v. Mason*, 78 Me. 452, 7 Atl. 11, that where logs bearing the same mark and quality become intermixed before they arrive at the mill without the fault of either party, each party is entitled to his own logs; or in absence of any distinguishing mark, to his proportional part thereof, and that if the defendant in that action used or converted to his own use more than his proportional part, he would be liable for the amount so converted, without a special demand.

So in the case at bar, if the appellants appropriated to their own use any stull timber belonging to the respondent,

they would be liable to him for the amount so appropriated; but if said rise in the river resulted in a loss to both parties, the respondent would only be entitled to recover his proportionate part of such stulls as were recovered by the lumber company, unless he could identify more than that amount. Had the court given appellants' requested instruction No. 7, the jury would have been instructed that as plaintiff's logs were not branded with a registered brand, when they became intermingled with others, he lost his title to them and they became prize logs. That certainly is not the law, for if plaintiff's stulls or logs were marked in a manner so that they could be identified, and he identified them, he could not be deprived of his title to them simply because he had not registered his brand or mark, and logs bearing the mark of the owner, under the provisions of said section, even though not recorded, did not become prize logs if they were claimed within one year after any general drive. The provisions of said sec. 1504 were intended particularly to apply to logs that became mixed with other logs in a general drive, and did not have a sufficient mark of identification on them, and may by analogy be applied to a drive caused by the elements and not a drive engineered by man. The court did not err in refusing to give said instruction No. 7.

It is next contended that the court erred in refusing to give appellants' requested instruction No. 8, which is as follows:

"If you find from the evidence that the defendants or either of them converted certain stulls of the plaintiff, I instruct you that in arriving at your conclusion as to the number of stulls for which defendants must answer, you are to take into consideration the percentage of stulls lost in the jam and deduct such percentage of loss from the (number) of stulls belonging to the plaintiff which went into the jam."

The evidence shows that the lumber company had 85,000 linear feet of stull timber and the respondent had 8,876 linear feet that went into said jam, making a total of 93,876 linear feet, and there was turned over to the lumber company only 30,854 feet of stulls by the Log Owners' Association who took possession of said logs and sorted them. The respondent

would be entitled to his proportionate part of said stulls.    Had he identified the entire amount of stull timber belonging to him that went into said jam in the 30,854 linear feet turned over to the lumber company, then he would be entitled to the value thereof.    But as the record shows that he only identified fifty-one stulls and the evidence fails to show the number of linear feet therein, he would be entitled to recover from the lumber company only his proportionate share of 30,854 feet.    Under the evidence in the case the court did not err in refusing to give said instruction No. 8, as it directs the jury, in arriving at their conclusion as to the number of stulls for which the appellants must pay the respondent, that they must take into consideration the percentage of stulls lost in the jam and deduct such percentage of loss from the number of stulls belonging to the plaintiff which went into the jam.

From what has been said in this opinion, on a retrial of the case, no doubt, proper instructions will be formulated and given to the jury in accordance with the views expressed herein.    It is clear from the law and the evidence that the plaintiff was not entitled to recover from the defendants more than the value of the stulls identified as his own and his proportionate share of the balance of the stulls turned over to the lumber company by the Log Owners' Association.

The judgment must be reversed and a new trial granted. Costs awarded to the appellants.

Stewart, C. J., and Ailshie, J., concur.