## HARRY ELLIS and MABEL E. ELLIS, Husband and Wife, Respondents, v. ASHTON AND ST. ANTHONY POWER COMPANY, a Corporation, and NORTH LAKE CANAL COMPANY, a Corporation, Appellants.

### [238 Pac. 517.]

DAMAGES — NEGLIGENCE — ELECTRICITY — DEATH — CUSTOM — EVIDENCE — HEARSAY — PLEADINGS — MATERIAL ALLEGATIONS — VARIANCE—SPECIAL INTERROGATORIES—WANTON NEGLIGENCE—NOTICE—INSTRUCTIONS—EXCESSIVE DAMAGES.

1. Evidence of custom of travel near a dangerous agency, properly alleged, is admissible.

2. Special interrogatories examined and *held* not prejudicial in this case, though such practice is not commended.

3. Where a dangerous instrumentality is maintained on a person's own property he is charged with the duty of not wantonly injuring a trespasser.

4. "Wanton" and "reckless" mean destitute of heed or concern for consequences.

5. A person who uses such a dangerous instrumentality as electricity is bound not only to know the extent of the danger but to exercise that degree of care practicable to avoid injury to everyone who may be lawfully in proximity of its wires or liable to come in contact with them.

6. While a party will not be deemed to anticipate the commission of a wilful wrong, yet, where under the circumstances a technical trespass may be reasonably anticipated, the owner of the premises will be liable for a failure to take special precautions to prevent injuries to the trespasser.

Publisher's Note.

3. Liability for injury to trespassing children from dangerous substances on premises, see note in 5 Ann. Cas. 503.

7.   The construction and maintenance, by a canal company and a company generating electricity, of an electric transmission wire carrying 44,000 volts, sagging at places, within reach of a child nine years of age standing on the ground, without warnings, barriers, fences or other obstructions protecting or guarding the line where trespassers may reasonably be expected, though the ground immediately beneath the wires was difficult of access, being a steep spoil bank made by the excavation of dirt deposited by drag-line buckets, is wanton negligence.

8.   Instructions examined and *held* not prejudicial.

9.   Before a verdict can be set aside on the ground of excessive damages, appearing to have been given under the influence of passion or prejudice, such fact must be clearly made to appear.

10.   Damages in the sum of $10,000 for the death of a little girl nine years old, caused by wanton negligence, *held* not excessive.

APPEAL from the District Court of the Ninth Judicial District, for Jefferson County. Hon. Geo. W. Edgington, Judge.

Action for damages. Judgment for plaintiff. *Affirmed.*

John W. Jones and Guy Stevens, for Appellants.

A child of tender years may be a trespasser and subject to the consequences of his trespass, especially when there is nothing about the premises attractive to children, and the only duty owing a trespassing child is that of avoiding wilful or wanton injury to him. (29 Cyc. 445, 446, and cases cited; 20 C. J. 353, and cases cited; *Mayfield Water & Light*

Publisher's Note.

7.   Duty and liability with reference to children of one maintaining electric wires, see notes in 10 **Ann. Cas.** 925; 21 **Ann. Cas.** 1096; **Ann. Cas.** 1917A, 895.

Duties and liabilities of electric corporations, see note in 100 **Am. St.** 515.

Duty to guard against danger from electric wires to infant trespasser, see note in 17 **A. L. R.** 833.

Electric wires as attractive nuisance, see note in 36 **A. L. R.** 181.

10.   Measure of damages recoverable by parent for death of minor child, see notes in **Ann. Cas.** 1912C, 58; **Ann. Cas.** 1916B, 532.

*Co. v. Webb's Admr.,* 129 Ky. 395, 111 S. W. 712, 18 L. R. A., N. S., 179, and cases there cited.)

The transmission line of the North Lake Canal Company was erected by it upon its own private property, and the deceased met her death as a trespasser on this property at a point where she had never theretofore been and at a point where there had been no travel and where no person could have been expected to go, and the company owed her no duty to expect her or to prepare for her safety. (*United Zinc & Chemical Co. v. Britt,* 258 U. S. 268, 42 Sup. Ct. 299, 66 L. ed. 615.)

Where plaintiffs set forth general allegations of negligence and follow them with a statement of specific acts of negligence, the plaintiffs will be confined in their proof to the acts specifically pleaded, and a variance amounts to a failure of proof. (*Flaherty v. Butte Electric Ry. Co.,* 40 Mont. 454, 135 Am. St. 630, 107 Pac. 416; *Bracey v. North Western Imp. Co.,* 41 Mont. 338, 137 Am. St. 738, 109 Pac. 706.) The specific acts of negligence charged must be proved. (29 Cyc. 587, and cases cited.)

The evidence of the use of the canal embankment in any manner not alleged in the complaint was inadmissible and should have been stricken on motion. The evidence must furnish substantial support for the cause of action alleged. (*Flaherty v. Butte Electric Ry. Co., supra,* and cases cited; *Bracey v. N. W. Imp. Co., supra.*)

By instructions Nos. 20, 21 and 24, the court permitted the jury to render a verdict against the defendants if they are found to have been negligent in a manner not specified in the complaint or put in issue by the pleadings. (*Flaherty v. Butte Electric Ry. Co., supra; Bracey v. N. W. Imp. Co., supra.*)

Instructions numbered 25, 26, 27 and 28 entirely disregard the element of trespass by the deceased and consequently incorrectly state the law applicable to the facts. (20 C. J. 353; 29 Cyc. 445; *United Zinc Chemical Co. v. Britt, supra; New York N. H. & H. Ry. v. Fruchter,* 260 U. S. 141, 43 Sup. Ct. 38, 67 L. ed. 173.)

The verdict of the jury is excessive. (*Fox v. Oakland Con. Street Ry.*, 118 Cal. 55, 62 Am. St. 216, 50 Pac. 25; *Golden v. Spokane & Inland Empire Ry. Co.*, 20 Ida. 526, 118 Pac. 1076; *Clark v. Tulare Lake Dredging Co.*, 112 Cal. App. 414, 112 Pac. 564.)

Harry Holden and Douglas D. Mote, for Respondents.

Those dealing with dangerous agencies, and especially those dealing with such an extremely dangerous agency as electricity, in stringing their wires in places where it is reasonably probable that children will go, should be charged with the very highest degree of care and skill to protect children from injury while in the vicinity of such places even though they may be trespassers, and a failure to do so is actionable negligence. (*Consolidated Elec. L. & P. Co. v. Healy*, 65 Kan. 798, 70 Pac. 884; *Daltry v. Media Consol. Elec. L. H. & P. Co.*, 208 Pa. St. 403, 57 Atl. 833; *Denver Consol. Elec. Co. v. Walters*, 39 Colo. 301, 89 Pac. 815; *Temple v. McComb City Elec. L. & P. Co.*, 89 Miss. 1, 119 Am. St. 698, 10 Ann. Cas. 924, 42 So. 874, 11 L. R. A., N. S., 449; *Meyer v. Menominee & M. L. & T. Co.*, 151 Wis. 279, 138 N. W. 1008; *Caruso v. Troy Gas Co.*, 153 App. Div. 431, 138 N. Y. Supp. 279; *Harrington v. Wadesboro*, 153 N. C. 437, 69 S. E. 399; 21 Am. & Eng. Ency. of Law, 2d ed., 473; *Peters v. Bowman*, 115 Cal. 345, 56 Am. St. 106, 47 Pac. 113, 598; *Faylor v. Great Eastern etc. Co.*, 45 Cal. App. 194, 187 Pac. 101; *Pierce v. United Gas & Elec. Co.*, 161 Cal. 176, 118 Pac. 700; *Haynes v. City of Seattle*, 69 Wash. 419, 125 Pac. 147; *Sioux City & P. R. Co. v. Stout*, 17 Wall. (U. S.) 657, 21 L. ed. 745; *Union Pac. Ry. Co. v. McDonald*, 152 U. S. 262, 14 Sup. Ct. 619, 38 L. ed. 434; *Heller v. New York N. H. & H. R. Co.*, 265 Fed. 192; *American Ry. Express Co. v. Crabtree*, 271 Fed. 287.)

The court's instructions as to the legal responsibility of the deceased and the responsibility of the defendants embodied the correct principle and rule of law as applied to the evidence and were properly submitted to the jury. (*Barrett*

*v. Southern Pac. R. Co.*, 91 Cal. 296, 25 Am. St. 186, 27 Pac. 666; *Pekin v. McMahon*, 154 Ill. 141, 45 Am. St. 114, 39 N. E. 484, 27 L. R. A. 206; *Faylor v. Great Eastern etc. Co., supra; Graves v. Washington Power Co.*, 44 Wash. 675, 87 Pac. 956, 11 L. R. A., N. S., 452.)

A person or corporation using wires charged with electricity is bound, while the public is not, not only to know the extent of the danger arising from them, but to use the very highest degree of care practicable to avoid injury. (*Tackett v. Henderson Bros. Co.*, 12 Cal. App. 658, 108 Pac. 151; *Cahill v. E. B. & A. L. Stone Co.*, 153 Cal. 571, 96 Pac. 84, 19 L. R. A., N. S., 1094; *Olson v. Gill Home Inv. Co.*, 58 Wash. 151, 108 Pac. 140, 27 L. R. A., N. S., 88.)

Liability attaches to the defendants notwithstanding deceased may be considered a technical trespasser. Children of tender years are not to be classed with trespassers, idlers or licensees to defeat recovery. (*Ferrell Admr. etc. v. Dixie Cotton Mills*, 157 N. C. 528, 73 S. E. 142, 37 L. R. A., N. S., 64; *Bjork v. City of Tacoma*, 76 Wash. 225, 135 Pac. 1005, 48 L. R. A., N. S., 331; *City of Pekin v. McMahon, supra; Nelson v. McLellan*, 31 Wash. 208, 96 Am. St. 902, 71 Pac. 747.)

The defendant owed a duty to the children in the vicinity wherein this line was constructed. (*Snare & Triest Co. v. Friedman*, 169 Fed. 1, 94 C. C. A. 369, 40 L. R. A., N. S., 367; *Akin v. Bradley Eng. & Mach. Co.*, 48 Wash. 97, 92 Pac. 903, 14 L. R. A., N. S., 586; *Jorgenson v. Crane*, 86 Wash. 273, 150 Pac. 419, L. R. A. 1915F, 983; *Mattson v. Minnesota & N. W. R. Co.*, 95 Minn. 477, 111 Am. St. 483, 104 N. W. 443, 70 L. R. A. 503.)

The instructions of the court should be considered as a whole, and it is not permissible to single out one instruction unless it is so wrong that it constitutes reversible error in itself. (*Quirk v. Sunderlin*, 23 Ida. 368, 130 Pac. 374; *Breshears v. Callender*, 23 Ida. 348, 131 Pac. 15; *Just v. Idaho Canal etc. Co.*, 16 Ida. 639, 133 Am. St. 140, 102 Pac. 381.)

Special questions submitted to the jury were proper. (*Kansas City v. Slangstrom,* 53 Kan. 431, 36 Pac. 706.)

GIVENS, J.—Respondents sued to recover damages for the death of their minor daughter caused by the alleged negligence in the construction and maintenance of an electric transmission line, it being further alleged that the deceased and other children were accustomed to travel upon the Canal Company's property near where the accident occurred, and that appellants by the use of ordinary and reasonable care and diligence should have known of such custom.

The jury found a general and special verdict in favor of plaintiffs for $10,000. Appellants appealed from the judgment rendered upon the verdict and from the order overruling and denying their motion for a new trial, motion for nonsuit having been made and denied before the case was submitted to the jury.

Estella May Ellis, the nine year old daughter of respondents, was instantly killed by coming in contact with the high tension transmission line of the North Lake Canal Company on October 3, 1918. • This transmission line was constructed by the Ashton and St. Anthony Power Company upon the north bank of the canal, the private property of the Canal Company, for a distance of about three and one-half miles. The canal was about twenty feet wide on the bottom and from four to fourteen feet deep, the embankment being about eight or nine feet above the surface of the adjoining land. The canal had been excavated by drag-line buckets and the dirt placed on each embankment making piles of loose dry dirt with apexes about a. step apart. The wires were on the top of poles 12 to 16 feet in length, set three feet in the embankment, 125 feet apart with a cross-arm three feet from the top of the pole carrying three No. 4 uninsulated galvanized steel wires in a triangular position, two being on the cross-arms and one on the top of the poles. The wire sagged in many places and at the point where the child was killed was only five feet four inches from the ground. No warnings, barriers, fences or other obstructions protected the public from the

line. The current of 44,000 volts was turned on October 1, 1916, immediately after the line was completed. The surrounding country was shown to be level, with about 12 farms in the more or less immediate neighborhood. The hummocks on top of the spoil bank were evidently considerably above the level of the surrounding country and would necessarily be somewhat prominent and afforded a view for quite a distance. At the time in question the pole line was one continuous line with the primary main transmission line of the Ashton and St. Anthony Power Company, and both companies, through their joint general manager, knew the dangerous construction of the secondary line and the condition of the country, and in general, the adjacent population, the number of school children and that the road of Mr. McKivitt, upon which the children traveled to school, extended along immediately by the spoil bank upon which the line was constructed.

On the morning of the fatal day the little girl's father, on going to his work, took her to the intersection of the main highway with the canal at the southwest corner of the McKivitt farm, from which point she had been in the habit of going with the other children along the McKivitt road and then north a little over one-half mile to the schoolhouse. On the day before the tragedy she had on a white dress and had frightened Mr. McKivitt's horses when he was attempting to drive them out of the field and he gave her a severe scolding. She was very sensitive and told the children that she was not going to be scolded again and that she would walk on the south side of the bank and left the other children and shortly after this her body was found underneath the pole line, lying on the ground. There were two or three inches of burned flesh upon the transmission wire, her right hand was burned, the ground was burned black immediately underneath the wire and the body of the deceased had rolled down the knoll and turned over two or three times. No serious question was raised that her death was caused by thus coming in contact with the live wire on the bank of the

North Lake Canal at a point a little more than a quarter of a mile from the bridge where her father had put her down.

Appellants assign as error the refusal of the trial court to grant their motion for a directed verdict on the ground that deceased was a trespasser and there being no showing, direct or implied, that the place was attractive or that the defendants knew of any custom of deceased or others to trespass; that the court erred in not striking the testimony of Mrs. Ellis concerning the custom of her daughter in traveling upon the embankment in going to and from school on the ground that it was hearsay, and that the court erred in not striking the testimony of all of the plaintiffs' witnesses on this point for the reason that such testimony was immaterial in view of the pleadings; that the court erred in propounding to the jury fifty-three leading interrogatories which were specially answered by the jury thus forming a special verdict, on the ground that such questions induced the jury to return a general verdict in favor of plaintiffs and that some of the answers were directly contrary to admitted facts; that the court erred in giving certain instructions which will be considered hereafter and that the verdict was excessive.

Mrs. Ellis detailed without objection on direct examination the custom of her daughter in going on the ditch banks. While there was some slight inconsistency in her statements on direct and cross examination, as to whether her statements were based on her own knowledge or what others told her, however, her answers did not so conclusively show that they were based on what others told her as to justify the court in striking the testimony. It was for the jury to weigh the evidence and from her redirect examination it is doubtful if any part of her testimony could be considered hearsay.

Appellants' counsel in his brief makes the following statement:

"It will be conceded that had it not been for the fact that the transmission line was constructed upon private property its construction in the manner specified would in itself have constituted negligence, and it will likewise be conceded

41 Idaho—8

that although the line was constructed upon private property, if it had been the established custom of children and others and the deceased to use the embankment, in walking to and from a certain place in a certain manner, which fact was known or should have been known by the defendants, and the deceased met her death by coming in contact with a high tension wire while pursuing her accustomed way, such construction of the transmission line and the operation thereof in its condition, with the other facts, would create a liability on the part of the defendants.''

He thus admits that if the custom of going upon the embankment was shown, the defendants would be liable, which is inconsistent with his third assignment of error to the effect that the court erred in refusing to strike all of the testimony of all of the witnesses with reference to travel at any point other than upon the public highway because immaterial in view of the pleadings made in this case. Certainly the way to establish a custom would be to show the number of people and the number of times or regularity with which they traveled on or across the embankment in question. Further on in his brief counsel complains because no use of the canal bank was shown, and one of the main assignments of error upon which he relies is that there was a failure of proof which constituted a fatal variance because no such custom or use of the canal bank was shown, urging that it was one of the material allegations of the complaint. If it was a material allegation the testimony of such custom or use was material. If it was not a material allegation the lack of such proof would not constitute a material variance or lack of proof. The allegation was a material one on the question of notice and therefore the evidence was admissible.

C. S., sec. 6861, permits the court to submit to the jury particular questions of fact to be answered by the jury, the same resulting in what is nominated a special verdict. (*Lufkins v. Collins*, 2 Ida. 256, 10 Pac. 300; *Burke v. McDonald*, 2 Ida. 679, 33 Pac. 49; *Fodey v. Northern Pac. Ry. Co.*, 21 Ida. 713, 123 Pac. 835; *Watkins v. Mountain Home*

*Co-op. Irr. Co.*, 33 Ida. 623, 197 Pac. 247.) The giving of such special interrogatories is within the properly exercised discretion of the court and, though the statute recites two classes of cases wherein it may be done and restricts the right of the court to demand answers to certain cases, such limitation need not be considered here because in either event the court may request the jury to answer such interrogatories though in one class of cases the jury would not be compelled to obey. (*Norman v. Rose Lake Lumber Co.*, 22 Ida. 711, Ann. Cas. 1913E, 673, 128 Pac. 85.) While these interrogatories were couched in terms most favorable to respondents and they logically led, step by step, to the ultimate conclusion of respondents' right to recover and thus no doubt would be and were calculated to lead the jury in that direction, since, as we hereafter indicate, the general and special verdicts embodied so far as appellants' liability was concerned the only conclusion that the jury could have reasonably reached from the evidence in this case, we cannot say that the court so far abused his discretion in giving these interrogatories as to warrant a reversal of the case. There was, however, no excuse or justification for the submission of these interrogatories and such practice is not to be commended.

The complaint was not framed, issues joined nor instructions given on the theory that the canal bank and the pole line were attractive places; thus the doctrine of the turntable cases does not apply and the judgment may not be sustained on that theory.

The complaint charges that in the construction and operation of this pole line the defendants were guilty of gross carelessness, negligence and wanton disregard of human life.

"This court has repeatedly declared that 'electric companies are held to the highest degree of care practicable to avoid injuries to persons who may accidentally or otherwise come in contact with their wires. Electricity is recognized as one of the most destructive agencies we have, and the highest degree of care and diligence is required by those who

are operating electrical plants in order to avoid injury to person and property.' (*Younie v. Blackfoot Light & Water Co.*, 15 Ida. 56, 96 Pac. 193; *Eaton v. City of Weiser*, 12 Ida. 544, 118 Am. St. 225, 86 Pac. 541; *Staab v. Rocky Mountain Bell Tel. Co.*, *supra.*)'' (*Gagnon v. St. Maries Light etc. Co., Ltd.*, 26 Ida. 87, 141 Pac. 88.)

"An electric light company is bound to use the highest degree of care practicable to avoid injury to any one liable to come accidentally or otherwise in contact with its wires." (*Daltry v. Media Electric Light, Heat & Power Co.*, 208 Pa. St. 403, 57 Atl. 833.)

Where the dangerous instrumentality is maintained on a person's own property he is charged with the duty of not wantonly injuring a trespasser. (20 C. J. 349; 20 C. J. 353; *Brannan v. Wimsatt*, 298 Fed. 833; *Temple v. McComb City Electric Light & P. Co.*, 89 Miss. 1, 119 Am. St. 698, 42 So. 874, 11 L. R. A., N. S., 449; 1 Joyce on Electric Law, 2d ed., p. 737, sec. 445, citing *Suburban Electric Co. v. Nugent*, 58 N. J. L. 658, 34 Atl. 1069, 32 L. R. A. 700; *Caruso v. Troy Gas Co.*, 153 App. Div. 431, 138 N. Y. Supp. 279; *Gandy v. Copeland*, 204 Ala. 366, 86 So. 3; *Braun v. Buffalo General Electric Co.*, 200 N. Y. 484, 140 Am. St. 645, 21 Ann. Cas. 370, 94 N. E. 206, 34 L. R. A., N. S., 1089; *Birmingham Ry. L. & P. Co. v. Jackson*, 198 Ala. 378, 73 So. 627.)

"In the Century Dictionary the word 'reckless' is defined as meaning 'desperately heedless.' In the New Standard Dictionary the term is defined as 'destitute of heed or concern for consequences; especially foolishly heedless of danger, headlong, rash; desperate.' In *Gustafson v. Chicago, R. I. & P. Ry. Co.*, 128 Fed. 85, an allegation is made that an engineer 'carelessly, negligently, and recklessly' disregarded and ran by signals. The court said that the term 'recklessly' thus employed, was tantamount to an allegation that it was a wanton disregard of all consequences, and would warrant the jury in awarding exemplary damages. In *Walsh v. United States*, 174 Fed. 615, 618, 98 C. C. A. 461, the Circuit Court of Appeals for the Seventh Circuit quotes

approvingly the language of Judge Archbald in his concurring opinion in *Lear v. United States*, 147 Fed. 359, 77 C. C. A. 527, saying; 'A reckless act, moreover, is always regarded as the equivalent of a wilful one.' In *Harrington v. Los Angeles Ry. Co.*, 140 Cal. 514, 98 Am. St. 85, 74 Pac. 15, 63 L. R. A. 238; the terms 'recklessly' and 'wantonly' were regarded as synonymous. So they were also regarded in *Bussy v. Charleston & W. C. Ry.*, 75 S. C. 116, 55 S. E. 163, and in *Crosby v. Seaboard Air Line Ry.*, 81 S. C. 24, 61 S. E. 1064. In *Pegram v. Seaboard Air Line Ry. Co.*, 139 N. C. 303, 4 Ann. Cas. 214, 51 S. E. 975, it is declared that the word 'reckless' means more than carelessness—it implies wilfulness. In *Baily v. North Carolina R. Co.*, 149 N. C. 169, 62 S. E. 912, it is said that the word 'recklessly' when used with 'wantonly' is the legal equivalent of wilful misconduct and intentional wrong. In *Kansas Pacific Ry. Co. v. Whipple*, 39 Kan. 531, 18 Pac. 730, the court said:

" 'There is a distinction between ordinary negligence and recklessness, or wantonness, as defined in our decisions. . . . . In popular use and by our decisions 'recklessness' and 'wantonness' are stronger terms than mere or ordinary negligence.'

"This distinction is again stated by the same court in *Chicago, R. I. & P. R. Co. v. Lacy*, 78 Kan. 622, 97 Pac. 1025." (*Heller v. New York, N. H. & H. R. Co.*, 265 Fed. 192.)

" 'Wires charged with an electric current may be harmless, or they may be in the highest degree dangerous. The difference in this respect is not apparent to ordinary observation, and the public, therefore, while presumed to know that danger may be present, are not bound to know its degree in a particular case. The company, however, which uses such a dangerous agent, is bound, not only to know the extent of the danger, but to use the very highest degree of care practicable to avoid injury to everyone who may be lawfully in the proximity of its wires and liable to come accidentally or otherwise in contact with them.' " (*Aurentz v. Nierman*, 76 Ind. App. 669, 131 N. E. 832.)

The evidence disclosed that the manager of the electric light company, who was also an officer of the Canal Company, knew that people had walked, at least near the ditch bank, and there is evidence from which the jury could properly have concluded that people in going across country would and did cross the bank and also that cattle would roam more or less indiscriminately back and forth; thus the circumstances were such that the company should have reasonably anticipated that people might go on or across the ditch bank.

"Other authorities declare that the liability of a proprietor in such circumstances is only that he shall not be grossly negligent, and shall abstain from the infliction of injuries by active misconduct or wantonness, or intent and purpose to harm. But the preferable view is believed to be that a party's liability to trespassers depends on the former's contemplation of the likelihood of their presence on the premises and the probability of injuries from contact with conditions existing thereon. While, as a rule, a party will not be deemed to anticipate the commission of a wilful wrong, yet where, under the circumstances, a technical trespass may reasonably be anticipated, the owner of the premises will be liable for a failure to take reasonable precautions to prevent injuries to the trespasser." (21 Am. & Eng. Ency. of Law, 2d ed., 472, 473.) (*Anderson v. Great Northern Ry. Co.,* 15 Ida. 513, 99 Pac. 91.)

In *Sheffield Co. v. Morton,* 161 Ala. 153, 49 So. 772, an electric company had its uninsulated wires near and running over a bluff within three and one-half or four feet above the level of the rock to which people could climb; the particular portion of the bluff, thus adjacent to the wires, was, however, more or less difficult of access, and the ground itself being steep, was, in and of itself, dangerous. The court found that no employee, agent or officer of the company knew that children were in the habit of getting upon this particular ledge. A boy was found immediately below this ledge with his skull fractured and evidence of a burn on one hand. The court absolved the company on the ground

that the place was dangerous in itself, independent of the position of the electric wire, holding, however, that to maintain a dangerous wire charged with electricity in a public place and so close to the ground that a person might come into contact with it would be negligence.

Under the doctrine of *Heller v. New York, N. H. & H. R. Co., supra,* precautionary measures of a reasonable character would have prevented the injury complained of and appellants are therefore liable.

"Reasonable prudence requires that, where the danger is known to be great, the care and watchfulness shall be commensurate with it, and it is a legal truism that what, under some conditions, will amount to ordinary care *will, under other conditions, amount to even that reckless disregard of the rights of others which, in law, is wantonness. Grand Trunk Ry. Co. v. Ives,* 144 U. S. 408, 12 Sup. Ct. 679, 36 L. ed. 485, *Birmingham Ry. L. & P. Co. v. Williams,* 158 Ala. 381, 48 So. 93, *Matson v. Maupin,* 75 Ala. 312. 'Negligence consists in a want of proper care, which always depends upon the circumstances in a particular case. Greater care is required to preserve a diamond than an ordinary chattel.' (*Carter v. Chambers,* 79 Ala. 230.)" (*Birmingham. Ry. L. & P. Co. v. Murphey,* 2 Ala. App. 588, 56 So. 817; *Goodwin v. Columbia Telephone Co.,* 157 Mo. App. 596, 138 S. W. 940; *Harrington v. Wadesboro,* 153 N. C. 437, 69 S. E. 399; *Caruso v. Troy Gas Co., supra; Meyers v. Menominee & Marinette Light & Traction Co.,* 151 Wis. 279, 138 N. W. 1008; *Alabama Power Co. v. Jones* (Ala.), 101 So. 898; *Wetherby v. Twin State Gas & Electric Co.,* 78 Vt. 189, 21 Ann. Cas. 1092, 75 Atl. 8, 25 L. R. A., N. S., 1220; *Braun v. Buffalo General Electric Co., supra.*)

There was absolutely nothing about the pole line to indicate danger to the ordinary passer-by, adult or child, the wires being slightly larger than a telephone wire. (*Braun v. Buffalo General Electric Co., supra.*)

The doctrine of *United Zinc & Chemical Co. v. Britt,* 258 U. S. 268, 42 Sup. Ct. 299, 66 L. ed. 615, is to be distinguished from the case at bar. In that case a poisonous

liquid in which children were killed could not be seen from any place where the children lawfully were; here the wire was in plain sight of a public road, private road and the entire surrounding country, and there it was not shown that the children were in the habit of going to the particular place; here there was evidence, not only that children but that others passed along and across the ditch bank and thus necessarily under and by the pole line.

*Mayfield Water & L. Co. v. Webb*, 129 Ky. 395, 111 S. W. 712, 18 L. R. A., N. S., 179, *Williams v. Springfield Gas & Electric Co.* (Mo. App.), 187 S. W. 556, and *O'Gara v. Philadelphia Electric Co.*, 244 Pa. 156, 90 Atl. 529, are to be distinguished from the instant case because there the dangerous wire could not be reached by one standing upon the ground.

The evidence in this case shows such wanton negligence as to make the company liable.

Instruction No. 20 does not materially depart from the allegations of the complaint and is supported by the above authorities, holding that a company is liable for wanton negligence. It evidently was not the purpose of the instruction to bring the case within the doctrine of the turntable cases; it merely stated that if the defendants maintained a dangerous agency and knew that children or others were accustomed to frequent or go on the ground, then if the dangerous appliance were unprotected and if by reason of defendants' negligence injury resulted, the defendants would be liable. In other words, this instruction was evidently framed for the purpose of further indicating to the jury what conditions should necessarily obtain before the defendants would be guilty of wanton negligence and it does not appear that the jury could have been misled thereby.

Instruction No. 21 is not as adverse to appellants as would have been authorized under *Gagnon v. St. Maries Light etc. Co., supra,* and to the extent it does go is clearly supported by *Ayrshire Coal Co. v. Wilder,* 75 Ind. App. 137, 129 N. E. 260.

Instruction No. 24 is correct. (*Daltry v. Media Electric Light, Heat & Power Co.,- supra; Ayrshire Coal Co. v. Wilder, supra; Flaherty v. Butte Electric Co.,* 40 Mont. 454, 135 Am. St. 630, 107 Pac. 416.)

Instruction No. 15 was as follows:

"You are instructed that if you find from all the evidence in this case that the children were accustomed to walk along the Peter McKivitt road mentioned in the complaint and answer, in going to and from school, the invitation to use the road was not an invitation to anyone to leave the road elsewhere than at its end, and the defendants were not expected to anticipate, except as herein qualified, that anyone would leave the road at any point and go therefrom upon its canal embankment and in this case a defendant cannot be held to guard against injury to anyone so doing, and an injury to anyone as a result of such action cannot by you be charged as the result or negligence of a defendant. Yet, Gentlemen of the Jury, if you believe from the evidence that upon the date of the alleged action and prior thereto it was and had been the custom of children and other pedestrians, and particularly this decedent, to go upon the canal embankment proper either while in transit or for the purpose of observation and that these facts were known to the defendant companies, on or before the alleged transmission of electrical energy through the wires in question, and if you further find from the evidence that the defendant companies made no precaution or instituted no steps to warn or safeguard the decedent against any danger hidden or apparent and that because of the said failure to warn or to safeguard, then the defendant companies in the event that the accident did take place as alleged in plaintiffs' complaint would be liable in damages.

"The court further instructs you, that the defendant company, the Ashton & St. Anthony Power, if at the time of the alleged accident was engaged in the generating and transmission of electrical energy would be chargeable with knowledge of the effect upon a human being if contact was had between the wire or wires carrying such voltage and a human

being, if as a matter of fact such voltage was being transmitted in the manner and form as alleged in the complaint."

The assignment of error with regard to this instruction is as follows:

"The court erred in giving to the jury instruction No. 15, for it does not correctly state the law applicable to this case, is contradictory in itself and contradictory of other instructions, and embraces elements of negligence not pleaded by the plaintiffs or proved, and which, if proved, would constitute a material variance between pleading and proof, and the court erred in giving to the jury instructions numbered 20 and 21, for the reason above set forth."

Further in his brief counsel complains because this instruction injects the purpose of observation into this case as justifying the trespass upon the property on the theory that such purpose was beyond the pleadings. The allegations of the complaint were that the deceased and other children were in the habit of traveling on the north bank of the canal and that other persons used said bank of said canal in traveling to or near said schoolhouse. While the words "purpose of observation" might well have been left out, it does not appear that they were in any way injurious to the defendants, because it does not appear that there was any issue raised as to the purpose for which the children may have gone upon the spoil bank which would in any way have decreased the defendants' liability, since the construction of the pole line was wanton and careless. In other words, the liability of the defendants would have been the same whether the children went on the spoil bank to walk, to look around, or to play, and therefore, while the instruction perhaps went somewhat beyond the actual allegations of the pleading it was not beyond the general import because a person could not travel upon the spoil bank without making some observation, at least to watch his step while on the bank, and while it was unnecessary to particularize as was done in this instruction, the same was not harmful to the defendants.

Instruction No. 4 is supported by *Daltry v. Media Elec-*

*tric Light, Heat & Power Co., supra; Ayshire Coal Co. v. Wilder, supra,* and did not depart from the pleadings.

Instructions Nos. 25, 26, 27 and 28 are objected to because it is urged they disregard the element of trespass by the deceased. Instruction No. 42 properly and sufficiently told the jury to consider all the instructions together, and instructions Nos. 12 and 15 sufficiently instructed the jury upon the question of trespass and therefore the instructions complained of were not prejudicial. (*Pekin v. McMahon,* 154 Ill. 141, 45 Am. St. 114, 39 N. E. 487, 27 L. R. A. 206; *Pierce v. United Gas & Electric Co.,* 161 Cal. 176, 118 Pac. 700; *Union Pac. Ry. Co. v. McDonald,* 152 U. S. 262, 14 Sup. Ct. 619, 38 L. ed. 434; *Barrett v. Southern Pac. R. Co.,* 91 Cal. 296, 27 Pac. 666.)

With reference to instructions Nos. 35, 36, 37 and 38 the court properly did not restrict the jury to take into consideration only the value of the services of the deceased until she had attained her majority. The jury were not left free to find excess damages, but were properly restricted by instruction No. 32. (*Anderson v. Great Northern Ry. Co., supra; Golden v. Spokane etc. I. E. R. Co.,* 20 Ida. 526, 118 Pac. 1076.)

Appellants contend that the verdict is excessive. It is of course impossible to arrive at any exact amount of damages which in a case of this kind would be just. A verdict of $4,145 for the wrongful death of a boy seven years old was sustained as not excessive in *Golden v. Spokane etc. R. R. Co., supra.* On the other hand, a verdict for $6,535 for the wrongful death of a daughter thirty-six years old was reduced to $4,535. (*Golden v. Spokane etc. I. E. R. Co.,* 20 Ida. 531, 118 Pac. 1077.) From an examination of the collection of cases in L. R. A. 1916C, 870, showing the various verdicts held not to be excessive, rendered upon the wrongful death of minors, it is apparent that there is no uniformity with regard to the amounts which have been held reasonable by the various courts throughout the country. While from the standpoint of the earning capacity of the deceased and probable contribution by her to the support of

her parents the amount is large, nevertheless the measure of damages is not in this state confined to such considerations alone. (*Anderson v. Great Northern Ry. Co., supra; Golden v. Spokane etc. I. E. R. Co., supra.*) Respondents evidently were in humble circumstances and the little girl was shown to have been large for her age, bright and intelligent, and a constant companion of her mother, and she evidently was of material assistance to her parents even at the time of her death; hence it cannot be said that a verdict for this amount is inherently or necessarily so excessive as to require a modification thereof, since it appears that the jury fixed the amount under proper instructions as to damages.

"Before a verdict can be set aside on the ground of 'excessive damages, appearing to have been given under the influence of passion or prejudice,' such fact must be made clearly to appear to the trial judge." (*Short v. Boise Valley Traction Co.*, 38 Ida. 593, 225 Pac. 398.)

The judgment is therefore affirmed, and it is so ordered. Costs awarded to respondents.

Wm. E. Lee and Budge, JJ., concur.

WILLIAM A. LEE, C. J., Concurring in Part and Dissenting in Part.—I agree that the negligence complained of was actionable and that it does not fall within the exception contended for by appellant. I think the amount awarded, $10,000, is excessive and does not come within any recognized rule of law for computing damages. The judgment should be reduced. No one will claim that any money consideration can adequately compensate for the loss of the life of a child occasioned by a death under these circumstances, but the law knows of no other method of compensation and hence can award only this kind. Everyone knows that in the present state of society and under existing conditions, the average child, during the period of its minority, more often costs its parents in its education and bringing up more than it can or does earn for them. While the companionship and comfort of a child to its parents may be considered as one

of the elements to be taken into account in fixing the damages for the wrongful causing of its death, the controlling element to be considered, under the law as I understand it, must in a large measure be based upon the pecuniary loss to its parents. No absolute standard of the amount of recovery can be fixed. The nearest analogy arises under the Workmen's Compensation Laws, C. S., sec. 6223 et seq. The award here allowed is so greatly in excess of the standard fixed by that law as to make one or the other appear ridiculous.

In the oral argument, respondents' counsel frankly admitted that the amount of the award was about three times what respondents would be willing to take if they could be assured of promptly receiving the smaller amount. The basis for the amount of recovery is not in any manner dependent upon the solvency or insolvency of the defendants. I conclude that the amount of the award is so clearly in excess of what the law contemplates, that its allowance is the result of an inflamed state of mind, due to the gross carelessness of an incompetent servant, for whose wrongful act appellants must suffer. No claim is made for punitive damages and the award must therefore rest solely upon the right of respondents to recover a monetary recompense equivalent to that sustained by the death of this child.

It is plain that the jury did not follow the court's instructions, numbers 35, 36 and 37, relating to the amount of recovery. In view of appellants being clearly liable for the amount that should have been awarded, substantial justice would be done if the excess be remitted to bring the award within the rules announced by the foregoing numbered instructions.

I am authorized to say that Mr. Justice Taylor concurs in the foregoing views.